50 Cal.Rptr.3d 294 (2006)
144 Cal.App.4th 166
Celine GUEYFFIER, Plaintiff and Respondent,
v.
ANN SUMMERS, LTD., Defendant and Appellant.
No. B186996.
Court of Appeal of California, Second District, Division Five.
October 26, 2006.
*296 Jenkens & Gilchrist, Glenn J. Plattner, Santa Monica, and Keith D. Klein, Los Angeles, for Defendant and Appellant.
Zelle, Hoffman, Voelbel, Mason, & Gette, Douglas J. Rovens and Marc J. Shrake, Los Angeles, for Plaintiff and Respondent.
*295 TURNER, P.J.

I. INTRODUCTION
This appeal arises out of cross-proceedings to confirm and vacate an international commercial arbitration award entered in California following an American Arbitration Association adjudication. The arbitration occurred under a franchise agreement between Celine Gueyffier (plaintiff), a French citizen residing in the United States, and Ann Summers, Ltd., a British corporation (defendant).[1] The franchise agreement provided, as an expressly material term, that defendant could not be found in breach of the contract absent prompt detailed written notice of the alleged breach and a reasonable opportunity to cure. The franchise agreement, including the arbitration clause, also barred the arbitrator from modifying any of its material terms. Defendant appeals from a September 12, 2005 judgment confirming the arbitration award in favor of plaintiff. Defendant contends the arbitrator exceeded his powers when he failed to enforce the notice and cure provision; therefore, the award must be vacated.
Under California arbitration law, specifically Code of Civil Procedure[2] section 1286.2, subdivision (a)(4), a court must vacate an arbitration award if it finds the arbitrator exceeded her or his powers and *297 the decision cannot be corrected without affecting its merits. However, there are several possible sources of authority that may have a bearing on the recognition and enforcement of the present award where the parties are not United States citizens: chapter 1 of the United States Arbitration Act (9 U.S.C. § 1 et seq.); the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (1970, 21 U.S.T. 2517, T.I.A.S. No. 6997); chapter 2 of the United States Arbitration Act (9 U.S.C. § 201 et seq.); the California Arbitration Act (§ 1280 et seq.); and the California international commercial arbitration law. (§ 1297.11 et seq.) We must first determine what law governs defendant's petition to vacate the present award. It is critical to emphasize that this case involves an arbitration award made in the United States and sought to be enforced in this country. We are not concerned with an arbitration award rendered in or under the procedural law of a foreign jurisdiction and sought to be enforced here as to which the vacatur analysis will differ. (Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc. (2d Cir.1997) 126 F.3d 15, 20, 22-23; M&C Corp. v. Erwin Behr GmbH & Co., KG (6th Cir.1996) 87 F.3d 844, 851; International Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial & Comercial (S.D.N.Y. 1990) 745 F.Supp. 172, 181-182; see Jacada, Ltd. v. Int'l Mktg. Strategies, Inc. (6th Cir.2005) 401 F.3d 701, 709, fn. 8.)
We conclude the vacatur provisions of the California Arbitration Act govern the petition to vacate the arbitration award. We further find the arbitrator exceeded his powers within the meaning of section 1286.2, subdivision (a)(4) when he failed to enforce the contractual notice and cure provision. Accordingly, we reverse the judgment. We direct the trial court to vacate the arbitration award and proceed pursuant to section 1287.

II. BACKGROUND

A. The Franchise Agreement
The parties entered into a franchise agreement effective December 6, 1999. Plaintiff obtained a license to operate an Ann Summers store in Los Angeles. The dispute resolution section of the franchise agreement provided in part: "Except as provided in Section 20.2 [actions for injunctive or other provisional relief, or involving trade or service marks], any controversy or claim between Franchisor and Franchisee arising out of or relating to this Agreement or any alleged breach hereof, including any issues pertaining to the arbitrability of such controversy or claim and any claim that this Agreement or any part hereof is invalid, illegal, or otherwise voidable or void, shall be submitted to binding arbitration. Said arbitration shall be conducted before and in accordance with the Commercial Rules of the American Arbitration Association (`AAA'). Judgement upon any award rendered may be entered in any Court having jurisdiction thereof. Except to the extent prohibited by Applicable Law, the proceedings shall be held in the city nearest the Franchisee's Store in which the [American Arbitration Association] maintains an office and facilities for conducting arbitration." With respect to defendant's obligations, the franchise agreement provided in Article 7.2: "Franchisor Default. Franchisor shall not, and can not be held in breach of this Agreement until (i) Franchisor shall have received from Franchisee, promptly after Franchisee first learns of the alleged breach, a written notice specifying in detail the facts constituting the alleged breach; and (ii) Franchisor shall have failed to remedy the breach within a reasonable period of time after such notice, which period shall not be less than 60 days.... *298 This is a material term of this Agreement and may not be modified or changed by any arbitrator in an arbitration proceeding or otherwise." Consistent with the foregoing, the arbitration clause also stated, "In no event may the material provisions of this Agreement including, but not limited to the method of operation, Authorised Product line sold or monetary obligations specified in this Agreement, amendments to this Agreement or in the Operations Manual be modified or changed by the arbitrator at any arbitration hearing."

B. The Arbitration
In May 2001, defendant filed an arbitration demand. Plaintiff filed a counterclaim. Arbitration hearings were conducted in August and September 2004. In his final award, issued on February 2, 2005, the arbitrator found: "In March 2001, [plaintiff] briefly opened and then closed, an Ann Summers franchise store in the Beverly Center which is located in the Los Angeles area. [Plaintiff] re-opened her store under the trade name *What Lies Beneath,' which store she operated for approximately two years before closing permanently. [¶] ... [¶] On or about May 2, 2001, [defendant] filed its demand for arbitration with the Los Angeles office of the [American Arbitration Association]. Pursuant to the applicable rules of the [American Arbitration Association], the arbitration was assigned to the International Centre for Dispute Resolution (`ICDR') of the [American Arbitration Association] for administration. On or about May 22, 2001, [plaintiff] filed a counterclaim. [¶] ... [¶] The Agreement is a valid and binding agreement between the parties. Pursuant to the Agreement, [defendant] obligated itself as franchisor to provide [plaintiff] as franchisee with operations manuals ..., training and assistance ..., and an advertising program.... Based upon the evidence presented, [defendant] failed to meet its obligations to provide operations manuals, training and assistance, and an advertising program. [¶] [Plaintiff] was given operations manuals which had been drafted for use in the [United Kingdom] without any modification for use in the United States or California. Several of the provisions in the operations manuals were contrary to public policy in California. [¶] [Plaintiff] was invited to attend a two-week training in the [United Kingdom]. She was given an agenda for the training, but several of those listed on the agenda were not aware that they were to provide training. Other portions of the agenda were simply cancelled. After spending several days of attending haphazard meetings, stocking an Ann Summers company store, and finding no further value in the training, [plaintiff] justifiably left before the end of the two-week stay. [¶] [Plaintiff] was not given any advertising program by [defendant] other than to send someone to dress the windows in the entry to the Beverly Center store. The image of the Beverly Center store, while purportedly conforming to the `soft look' of the Ann Summers Dublin store, drew a harsh reaction from customers in the upscale Beverly Center. The Arbitrator finds that the incidents of tomatoes being thrown at the store and insults being yelled at [plaintiff] did occur. The Los Angeles market was well-chosen as an entry market into the United States. However, [defendant] did little to introduce its products into the Los Angeles market and to mitigate the potential negative reaction from opening a lingerie and sex toy shop in an upscale mall in Beverly Hills. This lack of attention to the opening in Los Angeles contrasts to the store opening in Dublin, Ireland. [Defendant], knowing the conservative underpinnings of Irish culture, took care with public relations, sent a company representative to be *299 onsite for the opening in Dublin and to handle the foreseeable negative reaction from disgruntled shoppers. No such preparation or support was given to [plaintiff], who bore the brunt of the hostility and insults without support, [¶] The Arbitrator finds that [defendant] did not meet its obligations to provide operations manuals, training and assistance, or an advertising program. The effect of these breaches is seen in the disastrous opening of the Beverly Center store. By the time [plaintiff] was finally able to open the Beverly Center store, the effect of the breaches was not curable. Giving written notice to provide ... operations manuals, training and assistance, and an advertising program within a reasonable period of time would have been an idle act. Therefore, the requirement of giving sixty (60) days written notice (Article 7.2) is moot. The consequence of the foregoing analysis is a breach of the Agreement by [defendant], pursuant to the counterclaim filed by [plaintiff]." The arbitrator made no specific finding as to: when plaintiff learned of the contract breaches; whether she gave prompt detailed written notice thereof; and whether defendant had a reasonable opportunity to cure the contractual violations.

C. Proceedings In The Trial Court
As noted, plaintiff filed a petition to confirm the arbitration award and enter a judgment thereon pursuant to the California Arbitration Act. Defendant filed a petition to vacate the award under sections 1286 and 1286.2. Defendant argued the arbitrator exceeded his powers when he failed to enforce the franchise agreement's notice of alleged breach and opportunity to cure provision. Defendant presented evidence that at a deposition prior to the arbitration hearing plaintiff testified: she attended training in England in May 2000; she received defendant's operations manuals at that time; and she closed her franchise store after it had been open for approximately three days during March 2001. Plaintiff did not secure a ruling in the trial court on her evidentiary objections to and motion to strike the declaration of Keith D. Klein. As a result, plaintiff has forfeited her objections. (Johnson v. City of Loma Linda (2000) 24 Cal.4th 61, 65-66, 99 Cal.Rptr.2d 316, 5 P.3d 874; Sharon P. v. Arman, Ltd. (1999) 21 Cal.4th 1181, 1186-1187, fn. 1, 91 Cal. Rptr.2d 35, 989 P.2d 121, disapproved on another point in Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 853, fn. 19, 107 Cal.Rptr.2d 841, 24 P.3d 493.)
The trial court entered a judgment confirming the arbitration award on September 12, 2005. The trial court found the arbitrator did not refuse to enforce the notice and cure provision of the franchise agreement. Further, the trial court found the arbitrator did not exceed his powers by making a legal or factual error or by giving an erroneous reason for the award. This appeal followed.

III. DISCUSSION

A. The Relevant California Arbitration Act Vacatur Provision
Section 1286.2, subdivision (a)(4), the California Arbitration Act provision at issue, states: "(a) ... [T]he court shall vacate the award if the court determines any of the following: [¶] ... [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." Defendant contends nothing in chapters 1 and 2 of the United States Arbitration Act, the New York Convention, or section 1297.11 et seq., preempts or otherwise affects section 1286.2, subdivision (a)(4). We agree.

*300 B. The United States Arbitration Act
Nothing in chapter 1 of the United States Arbitration Act (9 U.S.C. § 1 et seq.), insofar as it relates to domestic arbitration awards, preempts section 1286.2, subdivision (a)(4). There are two chapters in the United States Arbitration Act. Chapter 1 consists of title 9 United States Code sections 1 through 16. As we will describe later, chapter 2 is the implementing legislation adopted as part of the ratification process of the New York Convention. Even if chapter 1 of the United States Arbitration Act applies, section 1286.2, subdivision (a)(4) is the controlling vacatur provision. As we held in Siegel v. Prudential Ins. Co. (1998) 67 Cal.App.4th 1270, 1272, 79 Cal.Rptr.2d 726, chapter 1 of the United States Arbitration Act does not preempt California's statutory grounds for vacating an arbitration award. (Accord, e.g., Ovitz v. Schulman (2005) 133 Cal.App.4th 830, 848-855, 35 Cal.Rptr.3d 117; Hotels Nevada, LLC v. Bridge Banc, LLC (2005) 130 Cal.App.4th 1431, 1438-1439, 30 Cal.Rptr.3d 903; Ekstrom v. Value Health (D.C.Cir.1995) 68 F.3d 1391, 1395-1396; DeBaker v. Shah (1994) 187 Wis.2d 252, 522 N.W.2d 268, 271, rev'd on other grds., DeBaker v. Shah (1995) 194 Wis.2d 104, 533 N.W.2d 464, 465; Baxter Health Care Corp. v. Harvard Apparatus, Inc. (1993) 35 Mass.App.Ct. 204, 617 N.E.2d 1018, 1020, fn. 2; Atlantic Painting & Contracting, Inc. v. Nashville Bridge Co. (Ky.1984) 670 S.W.2d 841, 846.) In cases falling under chapter 1 of the United States Arbitration Act, California courts are not required to apply title 9 United States Code section 10 which governs vacating arbitration awards. (Siegel v. Prudential Ins. Co., supra, 67 Cal. App.4th at p. 1290, 79 Cal.Rptr.2d 726; see Muao v. Grosvenor Properties, Ltd. (2002) 99 Cal.App.4th 1085, 1090-1091, 122 Cal. Rptr.2d 131.)

C. The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards

1. The New York Convention
The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards is a treaty which is commonly referred to as the New York Convention. (Telcordia Tech Inc. v. Telkom SA Ltd. (3d Cir.2006) 458 F.3d 172, 176, fn. 5; Dial 800 v. Fesbinder (2004) 118 Cal. App.4th 32, 48-49, 12 Cal.Rptr.3d 711.) The New York Convention is a treaty governing international commercial arbitration. It was adopted on June 10, 1958, following an international commercial arbitration conference. The historical precedent for the adoption of the New York Convention was described by the Second Circuit Court of Appeals thusly: "The [New York] Convention succeeded and replaced the Convention on the Execution of Foreign Arbitral Awards (`Geneva Convention'), Sept. 26,1927, 92 L.N.T.S. 301. The primary defect of the Geneva Convention was that it required an award first to be recognized in the rendering state before it could be enforced abroad, see Geneva Convention arts. 1(d), 4(2), 92 L.N.T.S. at 305, 306, the so-called requirement of `double exequatur.' See Jane L. Volz & Roger S. Haydock, Foreign Arbitral Awards: Enforcing the Award Against the Recalcitrant Loser, 21 Wm. Mitchell L.Rev. 867, 876-77 (1996); W. Laurence Craig, Some Trends and Developments in the Laws and Practice of International Commercial Arbitration, 30 Tex. Int'l L.J. 1, 9 (1995). This requirement Vas an unnecessary time-consuming hurdle,' van den Berg, [The New York Arbitration Convention of 1958 (1981) p.] 267, and `greatly limited [the Geneva Convention's] utility, Craig, [Some Trends and Developments in the Laws and Practice of International Commercial Arbitration, *301 supra, 30 Tex. Int'l L.J. at page] 9.[¶] The [New York] Convention eliminated this problem by eradicating the requirement that a court in the rendering state recognize an award before it could be taken and enforced abroad." (Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys `R' Us, Inc., supra, 126 F.3d at pp. 22-23; see van den Berg, The New York Arbitration Convention of 1958, supra, pp. 7-8, 267.)
Both France (of which plaintiff is a citizen) and the United Kingdom of Great Britain (under the laws of which defendant is organized) are among the 137 nations that are current signatories to the New York Convention. (United Nations Commission on International Trade Law (UCITRAL), Status, 1958Convention on the Recognition and Enforcement of Foreign Arbitral Awards, ) The United States participated in the international commercial arbitration conference at the United Nations. However, the United States Senate did not ratify the New York Convention until October 1968. The United States acceded to the New York Convention upon the enactment of implementing legislation in 1970. (Pub.L. No. 91-368, § 1 (July 31, 1970) 84 Stat. 692; see Sen.Rep. No. 91-702, 2d Sess., pp. 1-2 (1970); H.R.Rep. No. 91-1181, 2d Sess. (1970) [1970 U.S.C.C.A.N. 3601, 3601-3602].)
The legislation implementing the New York Convention in the United States was adopted as a new chapter 2 of the United States Arbitration Act, title 9 United States Code sections 201 through 208. In hearings before the Senate Committee on Foreign Relations, February 9, 1970, Richard D. Kearney of the Office of the Legal Advisor of the United States Department of State testified as to the reason a new chapter was adopted as opposed to amending existing statutes. Mr. Kearney stated, "[It was] basically to avoid the confusion which might result from a series of minor changes in the different sections of the [United States] Arbitration Act as between cases falling under the act in its present form and cases falling under the Convention." (Hearings before Senate Com. on Foreign Relations on Sen. No. 3274, 91st Cong., 2d Sess., Appendix to Sen.Rep. No. 91-702, p. 5 (1970).) The convention was intended to facilitate international commercial arbitration. The Supreme Court has observed: "The goal of the [New York] Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries. [Citations.]" (Scherk v. Alberto-Culver Co. (1974) 417 U.S. 506, 520, fn. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270; accord, Vimar Seguros y Reaseguros, S.A v. M/V Sky Reefer (1995) 515 U.S. 528, 538, 115 S.Ct. 2322, 132 L.Ed.2d 462; see also Sen.Rep. No. 91-702, 2d Sess., p. 3 (1970)["[T]he provisions of [Senate Bill No.] 3274 will serve the best interests of Americans doing business abroad by encouraging them to submit their commercial disputes to impartial arbitration for awards which can be enforced in both U.S. and foreign courts"].) Nonconflicting provisions of the United States Arbitration Act apply in matters falling within the New York Convention. (9 U.S.C. § 208 ["Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States"]; see Bergesen v. Joseph Muller Corp. (2d Cir. 1983) 710 F.2d 928, 934 ["There is no reason to assume that Congress did not *302 intend to provide overlapping coverage between the [New York] Convention and the Federal Arbitration Act"].)
Federal district courts have original jurisdiction of actions and proceedings falling under the New York Convention. (9 U.S.C. § 203.) If an action or proceeding relating to an arbitration agreement subject to the New York Convention is filed in a state court, the defendant may remove it to the federal district court. (9 U.S.C. § 204.) Absent the filing of a removal petition, a state court may exercise jurisdiction in a case arising under the international treaty. (Dial 800 v. Fesbinder, supra, 118 Cal.App.4th 32, 49-50, 12 Cal.Rptr.3d 711; Pan Atlantic Group Inc. v. Republic Ins. Co. (S.D.N.Y.1995) 878 F.Supp. 630, 637-645; Rest.3d The Foreign Relations Law of the United States, § 487, p. 629.)

2. The New York Convention Applies to the Present Nondomestic Arbitration Award
The parties agree this case involves what is termed by the New York Convention a nondomestic arbitration award. The New York Convention by its terms applies as follows: "This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." (New York Convention, Article 1(1).) The first sentence of New York Convention Article 1(1)"This convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where recognition and enforcement of such awards are sought ..." is inapplicable here. The award was "made"as that term is used in the first sentence of Article I(1) of the New York Conventionin California and the enforcement proceedings are occurring here. Thus, the present case does not involve an arbitration award returned in a foreign country. As the Second Circuit Court of Appeals held in Bergesen v. Joseph Muller Corp., supra, 710 F.2d at page 932, the territorial criteria expressed in the first sentence of Article 1(1) of the New York Convention is not met by an arbitration award made in the United States and sought to be enforced in this country. (See Park, Amending The Federal Arbitration Act (2002) 13 American Review of International Arbitration. 75, 96, fn. 83.) The present arbitration award was made in the United States and is sought to be enforced in the California courts. The first sentence of Article 1(1) of the New York Convention does not apply to this case.
The second sentence of Article 1(1) of the New York Convention"It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought" is controlling. The New York Convention does not define "domestic." However, the United States Courts of Appeals have held that title 9 United States Code section 202 defines an award "not considered as domestic" (New York Convention, Article 1(1)) for purposes of the New York Convention. (Jacada, Ltd v. Int'l Mktg. Strategies, Inc., supra, 401 F.3d at pp. 706-707; Bergesen v. Joseph Mutter Corp., supra, 710 F.2d at p. 933; Ledee v. Ceramiche Ragno (1st Cir.1982) 684 F.2d 184, 186-187; Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys `R' Us, Inc., supra, 126 F.3d at p. 19; Jain v. de Mere (7th Cir. 1995) 51 F.3d 686, 689; Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte *303 GmbH (11th Cir.1998) 141 F.3d 1434, 1440-1441.) Title 9, United States Code, section 202 states, "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title ["any maritime transaction or a contract evidencing a transaction involving commerce"], falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For purposes of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States."
There are two circumstances in which federal decisional authority has characterized arbitration awards to be nondomestic for purposes of the New York Convention. To begin with, federal courts have held an arbitration award is nondomestic when one or more parties is not a United States citizen. Also, even if all parties are United States citizens, when the commercial transaction has some reasonable relation with a foreign state, it is deemed to be nondomestic for New York Convention purposes. (Jacada, Ltd. v. Int'l Mktg. Strategies, Inc., supra, 401 F.3d at pp. 706-707; Ledee v. Ceramiche Ragno, supra, 684 F.2d at pp. 186-187; Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys `R' Us, Inc., supra, 126 F.3d at p. 19; Bergesen v. Joseph Muller Corp., supra, 710 F.2d at p. 933; Jain v. de Mere, supra, 51 F.3d at p. 689; Industrial Risk Insurers v. M.AN. Gutehoffnungshutte GmbH, supra, 141 F.3d at pp. 1440-1441.) In the case of Jain v. de Mere, supra, 51 F.3d at page 689, the Seventh Circuit Court of Appeals stated the New York Convention applies to any commercial arbitration agreement unless it: is between two "United States citizens"; involves property located in this country; and has no relationship with one or more foreign countries. Thus, the New York Convention applies in the United States to arbitration awards arising out of foreign commerce; that is, commercial relationships involving: foreign citizens; property located outside the United States; performance or enforcement abroad; or some other reasonable relation with a foreign state. (Jacada, Ltd. v. Int'l Mktg. Strategies, Inc., supra, 401 F.3d at pp. 706-707; Ledee v. Ceramiche Ragno, supra, 684 F.2d at pp. 186-187; Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys `R' Us, Inc., supra, 126 F.3d at p. 19; Bergesen v. Joseph Muller Corp., supra, 710 F.2d at p. 933; Jain v. de Mere, supra, 51 F.3d at p. 689; Industrial Risk Insurers v. M.AN. Gutehoffnungshutte GmbH, supra, 141 F.3d at pp. 1440-1441.)
To clarify, chapter 1 of the United States Arbitration act governs domestic interstate disputes. (9 U.S.C. § 2; Industrial Risk Insurers v. M.AN. Gutehoffnungshutte GmbH, supra, 141 F.3d at p. 1440; Hewlett-Packard Co. v. Berg (1st Cir.1995) 61 F.3d 101, 106.) By contrast chapter 2 of the United States Arbitration Act involves foreign commerce. In a February 9, 1970 hearing before the Senate Committee on Foreign Relations, Richard D. Kearney of the Office of the Legal Advisor of the United States Department of State testified that one purpose of chapter 2 of the United States Arbitration Act was to be a limiting declaration on this nations' treaty obligations under the New York Convention. (Sen. Rep. No. 91-702, 2d. Sess., p. 6 (1970).) Mr. Kearney testified: "[W]e were faced with the problem *304 that section 1 of the act, which defines commerce, specifically includes both interstate and foreign commerce, while the implementation of the [New York] Convention should be concerned only with foreign commerce. Consequently it was necessary to modify the definition of commerce to make it quite clear that arbitration arising out of relationships in interstate commerce remains under the original Arbitration Act and is excluded from the operation of the proposed chapter 2.[¶] To achieve this result we have included in section 202 a requirement that any case concerning an agreement or award solely between U.S. citizens is excluded unless there is some important foreign element involved...." (Ibid.) When the implementing legislation was before it, the Senate Foreign Relations Committee report stated: "The second sentence of section 202 is intended to make it clear that an agreement or award arising out of a legal relationship exclusively between citizens of the United States is not enforceable under the [New York] Convention in U.S. courts unless it has a reasonable relation with a foreign state." (Id at p. 2; H.R.Rep. No. 91-1181, 2d Sess. (1970) [1970 U.S.C.C.A.N. 3601, 3602].)
It follows from the foregoing discussion that an arbitration award sought to be recognized or enforced in the state where it was made may still fall within the New York Convention. That is the case here. The award at issue was rendered in the United States and enforcement is sought in California. Under the terms of the New York Convention, it is a nondomestic award. The award arises out of a commercial relationship between two parties neither of whom is a United States citizen. Plaintiff is a French citizen. Defendant is a British corporation. This case is subject to the New York Convention.

3. The New York Convention Does Not Preempt California Vacatur Law
The New York Convention does not preempt California vacatur law, specifically section 1286.2, subdivision (a)(4). The Supremacy Clause of the United States Constitution provides, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (U.S. Const., Art. VI, § 2, italics added.) The United States Supreme Court has held, "[T]he `external powers of the United States are to be exercised without regard to state laws or policies. The supremacy of a treaty in this respect has been recognized from the beginning.' ... `[A]ll international compacts and agreements' are to be treated with similar dignity for the reason that `complete power over international affairs is in the national government and is not and cannot be subject to any curtailment or interference on the part of the several states.' [Citation.]" (United States v. Pink (1942) 315 U.S. 203, 223, 62 S.Ct. 552, 86 L.Ed. 796; see U.S. v. Belmont (1937) 301 U.S. 324, 331, 57 S.Ct. 758, 81 L.Ed. 1134.) State law is preempted when it conflicts with or impairs the policy or provisions of an international treaty. (United States v. Pink, supra, 315 U.S. at p. 231, 62 S.Ct. 552; Nielsen v. Johnson (1929) 279 U.S. 47, 50, 49 S.Ct. 223, 73 L.Ed. 607.) However, as the United States Supreme Court noted in United States v. Pink, supra, 315 U.S. at pages 230-231, 62 S.Ct. 552, "It is, of course, true that even treaties with foreign nations will be carefully construed so as not to derogate from the authority and jurisdiction of the States of this nation unless clearly necessary to *305 effectuate the national policy. Guaranty Trust Co. v. United States [ (1938) ] 304 U.S. [126,] 143, [58 S.Ct. 785, 82 L.Ed. 1224], and cases cited. For example, in Todok v. Union State Bank [ (1930) ] 281 U.S. 449, [50 S.Ct. 363, 74 L.Ed. 956], this Court took pains in its construction of a treaty, relating to the power of an alien to dispose of property in this country, not to invalidate the provisions of state law governing such dispositions. Frequently the obligation of a treaty will be dependent on state law. Prevost v. Greneaux [ (1856) ] [60 U.S.)(19 How.) 1, 15 L.Ed. 572. But state law must yield when it is inconsistent with or impairs the policy or provisions of, a treaty or of an international compact or agreement. See Nielsen v. Johnson, [supra,] 279 U.S. 47, [49 S.Ct. 223, 73 L.Ed. 607]. Then, the power of a State to refuse enforcement of rights based on foreign law which runs counter to the public policy of the forum (Griffin v. McCoach [(1941)] 313 U.S. 498, 506, [61 S.Ct. 1023, 85 L.Ed. 1481]) must give way before the superior Federal policy evidenced by a treaty or international compact or agreement. Santovincenzo v. Egan [(1931) 284 U.S. 30, [52 S.Ct. 81, 76 L.Ed. 151]]; United States v. Belmont; supra [, 301 U.S. 324, [57 S.Ct. 758]]." (See Toll v. Moreno (1982) 458 U.S. 1, 37, 102 S.Ct. 2977, 73 L.Ed.2d 563.)
The interpretation of treaty language is governed by federal law. (United States v. Belmont, supra, 301 U.S. at pp. 331-332, 57 S.Ct. 758; In re Hogan (1986) 187 Cal.App.3d 819, 825, 232 Cal.Rptr. 90.) A treaty does not override state law unless, as the Supreme Court has explained, "[I]t is reasonably evident from [the] language that such was the intention." (United States v. Pink, supra, 315 U.S. at p. 255, 62 S.Ct. 552; Guaranty Trust Co. v. United States, supra, 304 U.S. at p. 143, 58 S.Ct. 785 ["the language of a treaty wherever reasonably possible will be construed so as not to override state laws or to impair rights arising under them"].) The United States Supreme Court has held, "The clear import of treaty language controls unless `application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.' Maximov v. United States [ (1963) ] 373 U.S. 49, 54, [83 S.Ct. 1054, 10 L.Ed.2d 184]." (Sumitomo Shoji Am., Inc. v. Avagliano (1982) 457 U.S. 176, 180, 102 S.Ct. 2374, 72 L.Ed.2d 765.) The United States Supreme Court has further held, in the context of an international treaty, preemption analysis turns on the: document's language and purpose; parties' shared expectations; negotiating and drafting history of the treaty; and the parties' post ratification understanding. (El Al Isr. Airlines v. Tsui Yuan Tseng (1999) 525 U.S. 155, 167-176, 119 S.Ct. 662, 142 L.Ed.2d 576; Zicherman v. Korean Air Lines Co. (1996) 516 U.S. 217, 226, 116 S.Ct. 629, 133 L.Ed.2d 596; Societe Nationale Industrielle Aerospatiale v. United States District Court (1987) 482 U.S. 522, 529, 533-539, 107 S.Ct. 2542, 96 L.Ed.2d 461.) In Societe Nationale, the United States Supreme Court stated: "In interpreting' an international treaty, we are mindful that it is `in the nature of a contract between nations,' [citation], to which `[g]eneral rules of construction apply.' [Citations.] We therefore begin "with the text of the treaty and the context in which the written words are used.' [Citation.] The treaty's history, `"the negotiations, and the practical construction adopted by the parties"' may also be relevant. [Citation.]" (Societe Nationale Industrielle Aerospatiale v. United States District Court, supra, 482 U.S. at pp. 533-534, 107 S.Ct. 2542.) We have held: "[An international] treaty may not be construed as preempting state law or any court procedures in *306 the absence of a clear intent to do so. [Citations.]" (Guardianship of Ariana K. (2004) 120 Cal.App.4th 690, 706, 15 Cal. Rptr.3d 817 [Hague Convention on the Civil Aspects of International Child Abduction], citing El Al Isr. Airlines v. Tsui Yuan Tseng, supra, 525 U.S. at p. 175, 119 S.Ct. 662 and Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court, supra, 482 U.S. at p. 539, 107 S.Ct. 2542.)
The New York Convention does not contain any explicit language preempting state vacatur law. (Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys `R' Us, Inc., supra, 126 F.3d at p. 22; see Lander Co., Inc. v. MMP Invs. (7th Cir.1997) 107 F.3d 476, 478 ["the New York Convention contains no provision for seeking to vacate an award"]; Tesoro Petroleum Corp. v. Asamera (South Sumatra), Ltd. (W.D.Tex. 1992) 798 F.Supp. 400, 404-405 [New York Convention does not authorize suit to vacate award].) However, the New York Convention does plainly state that an international commercial arbitration award may be refused enforcement if it has been set aside in the country in which it was made. (New York Convention, art. V(1(e).) Article V of the New York Convention, which lists multiple grounds for refusing to recognize or enforce an arbitration award, includes the following: "1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that: [¶] ... [¶] (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." (Italics added.) The federal courts have held the clear language of Article V(1)(e) of the New York Convention authorizes our nation's courts to apply domestic procedural arbitration law when an international commercial arbitration award is rendered in the United States and sought to be vacated here. (Jacada, Ltd. v. Int'l Mktg. Strategies, Inc., supra, 401 F.3d at pp. 708-709 & fn. 8; Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys `R' Us, Inc., supra, 126 F.3d at pp. 19-21; Spector v. Torenberg (S.D.N.Y.1994) 852 F.Supp. 201, 205-206 & fn. 4; see Lander Co. v. MMP Invs., supra, 107 F.3d at p. 478 [New York Convention "contemplates the possibility of the award's being set aside in a proceeding under local law"].)
The New York Convention's language is consistent with the analysis of the Second Circuit Court of Appeals in Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., supra, 126 F.3d at pages 19-21. In Yusuf Ahmed Alghanim & Sons, the Second Circuit Court of Appeals resolved the issue of whether the federal vacatur law applied to a nondomestic award returned in the United States. In Yusuf Ahmed Alghanim, as in this case, cross-motions to confirm and vacate the award, which was returned in an American Arbitration proceeding, were filed. (Id. at p. 18.) (Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., supra, 126 F.3d at pp. 19-20.) The arbitration award in question was returned and both confirmation and vacatur were then sought in the United States. (Id. at p. 21.) The Second Circuit Court of Appeals held, "We read Article V(1)(e) of the [New York] Convention to allow a court in the country under whose [procedural] law the arbitration was conducted to apply domestic arbitral law ... to a motion to set aside or vacate that arbitral award." (Ibid.) The Second Circuit explained: "There is no indication in the [New York] Convention of any intention to deprive the rendering state of its supervisory authority over an arbitral award, including its authority to set aside that award under domestic law.... [¶] ... *307 [U]nder the Convention, the power and authority of the local courts of the rendering state remain of paramount importance. `What the Convention did not do ... was provide any international mechanism to insure the validity of the award where rendered. This was left to the provisions of local law. The Convention provides no restraint whatsoever on the control functions of local courts at the seat of arbitration.' [Citation.]" (Id. at p. 22; see Jacada, Ltd. v. Int'l Mktg. Strategies, Inc., supra, 401 F.3d at p. 709.)
But if the arbitration award is returned in another nation, this country's courts' authority to vacate an arbitrator's decision is very different. The Second Circuit has explained: "[T]he Convention mandates very different regimes for the review of arbitral awards (1) in the state in which, or under the law of which, the award was made, and (2) in other states where recognition and enforcement are sought. The Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief. See Convention art. V(1)(e). However, the Convention is equally clear that when an action for enforcement is brought in a foreign state, the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention." (Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys `R' Us, Inc., supra, 126 F.3d at p. 23.)
The Fifth Circuit Court of Appeals has characterized the Yusuf Ahmed Alghanim & Sons holding as distinguishing between primary and secondary jurisdiction when reviewing an award subject to the New York Convention. The Fifth Circuit has described the Yusuf Ahmed Alghanim & Sons holding thusly: "The New York Convention provides a carefully structured framework for the review and enforcement of international arbitral awards. Only a court in a country with primary jurisdiction over an arbitral award may annul that award. Courts in other countries have secondary jurisdiction; a court in a country with secondary jurisdiction is limited to deciding whether the award may be enforced in that country. The Convention `mandates very different regimes for the review of arbitral awards (1) in the [countries] in which, or under the law of which, the award was made, and (2) in other [countries] where recognition and, enforcement are sought.' Under the Convention, the country in which, or under the [arbitration] law of which, [an] award was made' is said to have primary jurisdiction over the arbitration award. All other signatory states are secondary jurisdictions, in which parties can only contest whether that state should enforce the arbitral award." (Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (5th Cir.2004) 364 F.3d 274, 287, citing Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (5th Cir.2003) 335 F.3d 357, 364.) The federal courts have consistently held that when an arbitration award is returned in another country and vacatur proceedings occur outside the United States, the grounds specified in Article V of the New York Convention are the exclusive basis for setting aside the arbitrator's decision. (Admart AG v. Stephen and Mary Birch Found., Inc. (3rd Cir.2006) 457 F.3d 302, 307-308; Four Seasons Hotels and Resorts v. Consorcio Barr S.A. (11th Cir.2004) 377 F.3d 1164, 1170; Czarina, L.L.C. v. W.F. Poe Syndicate (11th Cir.2004) 358 F.3d 1286, 1292, fn. 3; Industrial Risk Insurers v. M.AN. Gutehoffnungshutte GmbH, supra, 141 F.3d at p. 1443, fn. 10; Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, *308 Inc., supra, 126 F.3d at p. 20; Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (2d Cir. 1974) 508 F.2d 969, 973; Ipitrade International, S.A v. Federal Republic of Nigeria (D.C.1978) 465 F.Supp. 824, 826; Fotochrome, Inc. v. Copal Co. (2d Cir.1975) 517 F.2d 512, 518.) Thus, because the award was returned in California and enforcement is sought in this state's courts, the New York Convention does not preempt the-vacatur provisions of section 1286.2, subdivision (a)(4).
To sum up, the New York Convention and its enabling legislation, chapter 2 of the United States Arbitration Act, do not preempt the vacatur provisions in section 1286.2, subdivision (a)(4). This case is subject to the New York Convention because it involves a nondomestic award involving a French citizen and an English corporation. But application of section 1286.2, subdivision (a)(4) does not violate the Supremacy Clause in that the New York Convention: does not address issues of local vacatur rules; reflects no intention to affect vacatur provisions like section 1286.2, subdivision (a)(4) when the award is returned in California and is sought to be enforced in this state; and is viewed by federal courts as not restricting signatories from enforcing their own vacatur rules to awards returned and enforcement proceedings occurring within their borders. No preemption has occurred.

D. Title 9.3 of the California Code of Civil Procedure Governing Arbitration and Conciliation of International Commercial Disputes (Title 9.3)
In 1988, the California Legislature adopted title 9.3 of the Code of Civil Procedure which consists of sections 1297.11 et seq. (Stats.1988, ch. 23, § 1, eff. March 7, 1988.) Sections 1297.11 et seq. were designed to facilitate agreements to arbitrate international commercial disputes in California. Title 9.3 is patterned after the Model Law on International Commercial Arbitration (June 21, 1985) promulgated by the United Nations Commission on International Trade Law. The purpose of title 9.3 was explained in an Assembly Committee on Judiciary report thusly: "The model act was intended to serve as a model for the adoption of national laws which would encourage parties to resolve international commercial disputes by arbitration. [¶] Proponent suggested that the adoption of [an] arbitration system based on the UNCITRAL model[] will provide assurance to international commercial interests that arbitrations in California will be conducted `pursuant to internationally recognized rules based on an international consensus.' Therefore, it is argued that adoption of the bill will encourage foreign commercial interests to select California as the place to conduct their arbitration and provide many American interests with a more convenient forum to resolve their international commercial disputes. [¶] ... [¶] This bill permits parties to agree to resolve international commercial disputes by arbitration in California." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 2667 (1987-1988 Reg. Sess.) as amended August 26, 1987, p. 4.) The California Council for International Trade argued in a letter to the judiciary committee chair: "[T]he need [for this legislation] arises out of the fact that California companies will not, for the most part, be able successfully to negotiate in their contracts with foreign parties for California as the situs of arbitration for their contractual disputes unless a separate arbitration system for international commercial disputes, such as exemplified by [proposed title 9.3], is instituted in this state. [¶] Foreign parties are concerned and often fearful of subjecting themselves to American judicial procedures, particularly as respects our discovery *309 procedures, the possibilities for court intervention, and our practice of cross-examination of witnesses. This concern is almost universal...." (Harry B. Endsley, Chairman, Legislative Committee, California Council for International Trade, letter to Assembly member Elihu Harris, Chair, Assem. Com. on the Judiciary. May 25, 1987, orig. underscore.)
The Senate Rules Committee, Office of Senate Floor Analyses explained: "Existing California statute ([sections 1280 et seq.]) provides for the arbitration of disputes as an alternative to litigation. Review of proceedings and enforcement of awards are, however, within the venue of the civil justice system and are subject to the regular rules of civil procedure. [¶] In order to provide a framework for the resolution of commercial disputes involving multiple nations from varying legal traditions, [UNCITRAL] has adopted a Model Arbitration Law that has become widely accepted as the procedural standard for resolving international trade differences. This model act differs from the California procedures primarily in the extent to which arbitration issues may be appealed or reviewed in civil court. [¶] This bill would provide for the arbitration and conciliation of international commercial disputes according to the standards of the United Nations Commission on International Trade Law. It would specify the form of the arbitration agreement, delineate judicial involvement in aid of arbitration, establish the manner and conduct of arbitration, the making of awards and termination of proceedings, and specify the conduct and effect of conciliation procedures, [¶] The purpose of this measure is to permit the arbitration of international commercial disputes in California according to accepted international standards, thereby rendering foreign nationals more amenable to negotiating their disputes in this state." (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Assem. Bill No. 2667 (1987-1988 Reg. Sess.) as amended Sept. 3, 1987, pp. 1-2.) The Senate Rules Committee analysis noted, "The court would be prohibited from intervening in the arbitration and conciliation processes except as specified in the bill or as permitted under federal law." (Id. at p. 2.) Further, the rules committee analysis stated, "Enforcement of any awards arising from the proceedings would be subject to such international treaties and agreements as may be relevant." (id. at p. 5).
Title 9.3 expressly applies "to international commercial arbitration and conciliation, subject to any agreement which is in force between the United States and any other state or states" (§ 1297.11) when "the place of arbitration or conciliation is in the State of California." (§ 1297.12.) Pursuant to section 1297.13: "An arbitration or conciliation agreement is international if any of the following applies: (a) The parties to an arbitration or conciliation agreement have, at the time of the conclusion of that agreement, their places of business in different states. [¶] (b) One of the following places is situated outside the state in which the parties have their places of business: [¶] (i) The place of arbitration or conciliation if determined in, or pursuant to, the arbitration or conciliation agreement, [¶] (ii) Any place where a substantial part of the obligations of the commercial relationship is to be performed. [¶] (iii) The place with which the subject matter of the dispute is most closely connected. [¶] (c) The parties have expressly agreed that the subject matter of the arbitration or conciliation agreement relates to commercial interests in more than one state. [¶] (d) The subject matter of the arbitration or conciliation agreement is otherwise related to commercial interests in more than one state." "State" is defined for purposes of section 1297.13 in *310 section 1297.15, "For the purposes of Section 1297.13, the states of the United States, including the District of Columbia, shall be considered one state." "Commercial" is defined in section 1297.16: "An arbitration or conciliation agreement is commercial if it arises out of a relationship of a commercial nature including, but not limited to, any of the following: [¶] ... [¶] (e) A joint venture or other, related form of industrial or business cooperation."
Title 9.3 governs the manner and conduct of arbitration proceedings including: petitions to compel arbitration under an international commercial arbitration agreement (§ 1297.81); the composition of arbitral tribunals (§ 1297.101 et seq.); the manner and conduct of arbitration (§ 1297.181 et seq.); and the making of the arbitral award and termination of arbitration proceedings (§ 1297.281 et seq.). However, the parties are free to specify the procedure to be followed during the arbitration. Section 1297.191 provides, "Subject to this title, the parties may agree on the procedure to be followed by the arbitral tribunal in conducting the proceedings."
However, title 9.3 does not itself include any provisions for enforcement, confirmation, correction, or vacation of an arbitration award. Title 9.3 expressly supersedes provisions of the California Arbitration Act concerning how arbitration proceedings are conducted, specifically sections 1280 to 1284.2. Section 1297.17 states in part, "[T]his title supersedes Sections 1280 to 1284.2, inclusive, with respect to international commercial arbitration and conciliation." By omission, title 9.3 expressly does not supersede California Arbitration Act procedures for enforcement, confirmation, correction, or vacation of an arbitration award, sections 1285 et seq. (§ 1297.17.) According to an Assembly Committee on Judiciary report, proponents of the law felt federal law and treaties already provided enforcement procedures: "Unlike [the UNCITRAL model law], this bill makes no provisions for the enforcement of an arbitral award. Proponents point out that federal law and treaties already provide the procedures for enforcement of such an award." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 2667 (1987-1988 Reg. Sess.) as amended August 26,1987, p. 5.) Similarly, the Senate Committee on Judiciary reported, "Enforcement of any awards arising from the proceedings would be subject to such international treaties and agreements as may be relevant." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2667 (1987-1988 Reg. Sess.) as amended September 3,1987, p. 3.)
As applied to the present case, title 9.3 does not govern the motion to vacate the award. Under title 9.3, the parties to an arbitration agreement may agree on the procedure to be employed. (§ 1297.191.) Here, the parties choose an American Arbitration Association adjudication under its Commercial Rules. Further, as discussed above, title 9.3 does not provide for enforcement, confirmation, correction, or vacation of international commercial arbitration awards. In short, title 9.3 has no bearing on the outcome of this case.

E. The Arbitrator Exceeded His Powers And The Award Cannot Be Corrected
Defendant contends the arbitrator exceeded his powers because the franchise agreement explicitly barred the return of a breach of contract finding unless plaintiff promptly gave detailed written notice of alleged violation of contractual terms and afforded it a reasonable opportunity to correct the problems. The arbitrator did not find plaintiff gave defendant the required notice. The arbitrator, in finding the notice requirement was moot, impliedly *311 found plaintiff did not give notice of alleged breach. The question presented is whether it was within the arbitrator's power to construe the franchise agreement as allowing him to excuse the notice and cure requirement by finding it would have been an idle act to comply.
The California Supreme Court has held that subject to limited exceptions: "[I]t is the general rule that, `The merits of the controversy between the parties [to a private arbitration agreement] are not subject to judicial review.' [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.] [¶] Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 11, 10 Cal.Rptr.2d 183, 832 P.2d 899; see Jones v. Humanscale Corp. (2005) 130 Cal.App.4th 401, 407-08, 29 Cal.Rptr.3d 881.) Defendant relies on the section 1286.2, subdivision (a)(4) exception to the general rule precluding judicial review of arbitration awards with respect to arbitrators who act in excess of their contractual authority. The Supreme Court has explained: "It is well settled that `arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' (O'Malley [v. Petroleum Maintenance Co. (1957) ] 48 Cal.2d [107,] 111, [308 P.2d 9]; Hacienda Hotel v. Culinary Workers Union (1985) 175 Cal. App.3d 1127, 1133, [223 Cal.Rptr. 305].) A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers.... [¶] ... [I]t is within the `powers' of the arbitrator to resolve the entire `merits' of the `controversy submitted' by the parties. (§ 1286.2, subd. (d); 1286.6, subd. (b), (c).) ... [T]he `merits' include all the contested issues of law and fact submitted to the arbitrator for decision. The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." (Moncharsh v. Heily & Blase, supra, 3 Cal.4th at p. 28, 10 Cal.Rptr.2d 183, 832 P.2d 899; accord, Moshonov v. Walsh (2000) 22 Cal.4th 771, 775, 94 Cal.Rptr.2d 597, 996 P.2d 699["[A]rbitrators do not `exceed[] their powers' ... merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators"].)
It is also true, however, that, as the Supreme Court held in Moncharsh: "In cases involving private arbitration, `[t]he scope of arbitration is ... a matter of agreement between the parties' [citation], and `"[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission."' [Citation.]" (Moncharsh v. Heily & Blase, supra, 3 Cal.4th at pp. 8-9, 10 Cal.Rptr.2d 183, 832 P.2d 899; see Vandenberg v. Superior Court (1999) 21 Cal.4th 815, 830, 88 Cal.Rptr.2d 366, 982 P.2d 229.) The parties may agree to limit or restrict an arbitrator's authority and powers. (Advanced Micro Devices, Inc. v. Intel Corp. (1994) 9 Cal.4th 362, 375, 36 Cal.Rptr.2d 581, 885 P.2d 994; see Ajida Technologies, Inc. v. Roos Instruments, Inc. (2001) 87 Cal. App.4th 534, 541, 104 Cal.Rptr.2d 686.) Our colleagues in the Third District Court of Appeal have explained: "The powers of arbitrators derive from, and are limited by, the agreement to arbitrate. (Moncharsh [v. Heily & Blase], supra, 3 Cal.4th at p. 8, [10 Cal.Rptr.2d 183, 832 P.2d 899].) `Although ... section 1286.2 permits the court to vacate an award that exceeds the arbitrator's powers, the deference due an *312 arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers. [Citations.]' (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 372, [36 Cal.Rptr.2d 581, 885 P.2d 994].)" (Jordan v. Department of Motor Vehicles (2002) 100 Cal. App.4th 431, 444, 123 Cal.Rptr.2d 122.) We must, however, uphold the parties' express agreement to restrict the arbitrator's authority. (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at pp. 375-376, 36 Cal.Rptr.2d 581, 885 P.2d 994; California Faculty Ass'n v. Superior Court (1998) 63 Cal.App.4th 935, 944, 75 Cal.Rptr.2d 1.)
In Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at pages 372-383, 36 Cal.Rptr.2d 581, 885 P.2d 994, the Supreme Court delineated the limited scope of judicial review of an arbitrator's power as described in Moncharsh. At issue in Advanced Micro Devices, Inc. was whether the arbitrator exceeded his authority in fashioning a contract breach remedy. The parties had agreed to binding arbitration of disagreements arising under their contract. The arbitrator's powers were described in the arbitration clause thusly, "`The Arbitrator may grant any remedy or relief which the Arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.'" (Id. at p. 368, 36 Cal.Rptr.2d 581, 885 P.2d 994.) Further, the arbitrator was instructed, "`[T]o interpret and apply these Rules insofar as they relate to his powers and duties.'" (Id. at pp. 368-369, 36 Cal.Rptr.2d 581, 885 P.2d 994.) The Supreme Court explained: "California law allows a court to correct or vacate a contractual arbitration award if the arbitrators `exceeded their powers.' ( ... § 1286.2, subd. (d), 1286.6, subd. (b).) In Moncharsh v. Heily & Blase [, supra,] 3 Cal.4th [at page] 28, [10 Cal.Rptr.2d 183, 832 P.2d 899], we held arbitrators do not exceed their powers merely by erroneously deciding a contested issue of law or fact; we did not, however, have occasion there to further delineate the standard for measuring the scope of the arbitrators' authority. This case requires us to decide the standard by which courts are to determine whether a contractual arbitrator has exceeded his or her powers in awarding relief for a breach of contract." (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 366, 36 Cal.Rptr.2d 581, 885 P.2d 994.) The Supreme Court held: "We conclude that, in the absence of more specific restrictions in the arbitration agreement, the submission or the rules of arbitration, the remedy an arbitrator fashions does not exceed his or her powers if it bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly or impliedly, by the arbitrator." (Id. at p. 367, 36 Cal.Rptr.2d 581, 885 P.2d 994.) The Supreme Court noted, however, "[Arbitrators may not award remedies expressly forbidden by the arbitration agreement or submission...." (Id. at p. 381, 36 Cal. Rptr.2d 581, 885 P.2d 994.) The Supreme Court cautioned, "It follows that parties entering into commercial contracts with arbitration clauses, if they wish the arbitrator's remedial authority to be specially restricted, would be well advised to set out such limitations explicitly and unambiguously in the arbitration clause." (Id. at p. 383, 36 Cal.Rptr.2d 581, 885 P.2d 994; see Taylor v. Van-Catlin Construction (2005) 130 Cal.App.4th 1061, 1066, 30 Cal.Rptr.3d 690.) Whether the arbitrator exceeded his power is a question of law; accordingly, our review of the judgment confirming the arbitration award is de novo. (Advanced *313 Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 376, fn. 9, 36 Cal.Eptr.2d 581, 885 P.2d 994; Kahn v. Chetcuti (2002) 101 Cal.App.4th 61, 65, 123 Cal.Rptr.2d 606; Ajida Technologies, Inc. v. Roos Instruments, Inc., supra, 87 Cal.App.4th at p. 541, 104 Cal.Rptr.2d 686; California Faculty Ass'n v. Superior Court, supra, 63 Cal.App.4th at p. 945, 75 Cal.Rptr.2d 1.)
We turn to the question whether the present arbitration agreement should be read to "explicitly and unambiguously" restrict the arbitrator's power to excuse the notice and cure requirement on mootness grounds. We conclude the arbitrator exceeded his powers. The franchise agreement contains an express and explicit material term requiring that specified notice and opportunity to cure requirements be met before defendant, as franchisor, can be found in breach of contract. As noted above, the franchise agreement states, "Franchisor shall not, and can not be held in breach of this Agreement until (i) Franchisor shall have received from Franchisee, promptly after Franchisee first learns of the alleged breach, a written notice specifying in detail the facts constituting the alleged breach; and (ii) Franchisor shall have failed to remedy the breach within a reasonable period of time after such notice...." The franchise agreement further explicitly prevented the arbitrator from modifying or changing any material term of the franchise agreement, "In no event may the material provisions of this Agreement ... be modified or changed by the arbitrator at any arbitration hearing." The arbitrator modified and changed the explicit terms of the notice and cure requirement when he found it had been excused.
Pursuant to the explicit and unambiguous terms of the franchise agreement, no contract breach could be found unless plaintiff gave written detailed notice of the alleged violation of contractual terms and defendant had a reasonable opportunity to cure. The arbitrator did not find that the required notice was promptly given after plaintiff first learned of the breach. Instead, the arbitrator concluded that by the time plaintiff opened her Beverly Center store, defendant's contract violations were not curable and giving notice of alleged breach and an opportunity to cure would have been an idle act. In other words, the arbitrator acknowledged plaintiff did not give the contractually required notice, but determined it was unnecessary to do so. Under the franchise agreement, the arbitrator had no power to alter the notice and cure requirement. The remedy granted compensatory breach of contract damageswas excluded under the franchise agreement in the circumstances of this case as reflected in the arbitrator's decision. (California Faculty Ass'n v. Superior Court, supra, 63 Cal.App.4th at pp. 952-954, 75 Cal.Rptr.2d 1 [arbitrator violated agreement as to scope of arbitral review of tenure decisions]; Bonshire v. Thompson (1997) 52 Cal.App.4th 803, 808-812, 60 Cal. Rptr.2d 716 [arbitration agreement prevented the arbitrator from relying on extrinsic evidence in contravention of a contractual arbitration clause].)
This is a case where the parties to the arbitration agreement complied with the sage advice set forth in Advanced Micro Devices, Inc. that any restrictions on the arbitrator's power be set forth explicitly and unambiguously. (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 383, 36 Cal.Rptr.2d 581, 885 P.2d 994; Taylor v. Van-Catlin Construction, supra, 130 Cal.App.4th at p. 1061, 30 Cal.Rptr.3d 690.) By properly drafting an arbitration clause, parties can limit the powers of arbitrators. This is what occurred here. Our opinion today enforces the restrictions on the arbitrator's power selected by the parties.

*314 F. Future Proceedings
The arbitration award cannot be corrected without affecting the merits. The award turns on defendant's violation of the franchise agreement, a breach that, by contract, could not be found by an arbitrator absent notice of alleged breach and an opportunity to cure. Therefore, the judgment confirming the arbitration award must be reversed.
The issue remains as to what is to occur upon issuance of the remittitur. Section 1287 states in part: "If the award is vacated, the court may order a rehearing before new arbitrators. If the award is vacated on the grounds set forth in subdivision (d) or (e) of Section 1286.2, the court with the consent of the parties to the court proceeding may order a rehearing before the original arbitrators." Section 1287, when it was enacted and now, vests the trial court with the discretion to order a rehearing and sets forth limitations on the use of the former arbitrators. The problem is that section 1286.2, as presently drafted, no longer contains a subdivision (d) or (e). Section 1287 was adopted in its present form in 1961. (Stats.1961, ch. 461, § 2, p. 1547.) Also in 1961, then section 1286.2, subdivisions (d) and (e) was adopted and it stated: "Subject to Section 1286.4, the court shall vacate the award if the court determines that: [¶] ... [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." (Stats.1961, ch. 461, § 2, p. 1546) After 1961, there were several amendments to section 1286.2 which are unrelated to this appeal. (Stats. 1993, ch. 768, § 5, pp. 4261-262; Stats. 1997, ch. 445, § 4.[3])
*315 In 2001, as part of Senate Bill No. 475 (2001-2002 Reg.Sess.), section 1286.2 was amended to state as it does now: "(a) Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: [¶] (1) The award was procured by corruption, fraud or other undue means. [¶] (2) There was corruption in any of the arbitrators, [¶] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted, [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (6) An arbitrator making the award either: [¶] (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives. [¶] (b) Petitions to vacate an arbitration award pursuant to Section 1285 are subject to the provisions of Section 128.7." (Stats.2001, ch. 362, § 7.)
As can be noted, section 1287 with its remand provisions refers to section 1286.2, subdivisions (d) and (e). Former section 1286.2 subdivision (c), with its reference to the arbitrator exceeding his or her powers, is the relevant statutory provision. The provision which allows an award to be vacated when an arbitrator exceeds his or her powers is now located in section 1286.2, subdivision (a)(4). When section 1286.2 was redrafted in 2001, no corresponding change was made to section 1287. This was a drafter's oversight. (People v. Birkett (1999) 21 Cal.4th 226, 241, 87 Cal. Rptr.2d 205, 980 P.2d 912 [anomaly in Pen.Code, § 1202.4 the apparent result of a drafting oversight]; County of Santa Clara v. Deputy Sheriffs' Assn. (1992) 3 Cal.4th 873, 880, 13 Cal.Rptr.2d 53, 838 P.2d 781 ["Legislature's intention to delete peace officer designations from the various provisions scattered throughout the codes, to combine them in chapter 4.5, and to render those designations the sole source of peace officer status is so clear that the failure to include these two provisions in chapter 4.5 must be attributed to legislative oversight"]; People v. Jackson (1985) 37 Cal.3d 826, 838, fn. 15, 210 Cal.Rptr. 623, 694 P.2d 736, overruled on other grounds in People v. Guerrero (1988) 44 Cal.3d 343, 355, 243 Cal.Rptr. 688, 748 P.2d 1150, as stated in People v. Burton (1989) 48 Cal.3d 843, 863, 258 Cal.Rptr. 184, 771 P.2d 1270 ["Proposition 8's failure to amend section 1170.1, subdivision (g) appears to be a draftsman's oversight comparable to the failure to amend subdivision (f)"].) The purpose of the 2001 legislation which relettered and renumbered the provisions of section 1286.2 was to: impose ethical standards for arbitrators; require an arbitration award to be vacated if the *316 arbitrator failed to disqualify herself or himself as required; and to "dismiss an award" if the arbitrator failed to timely disclose grounds for disqualification. (Legis. Counsel's Dig., Sen. Bill No. 475 (2001-2002 Reg. Sess.) Stats.2001, ch. 362.[4]) Further, the Legislature expressly stated that Senate Bill No. 475 was declarative of existing law. (Legis. Counsel's Dig., Sen. Bill No. 475 (2001-2002 Reg. Sess.) Stats.2001, ch. 362.[5]) No committee report prepared during the legislative process concerning Senate Bill No. 475 contains any evidence of an intention to modify section 1287. (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Rep. on Sen. Bill No. 475 (2001-2002 Reg. Sess.) Sept. 6, 2001; Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Rep. on Sen. Bill No. 475 (2001-2002 Reg. Sess.) Sept. 5, 2001; Sen.3d Reading Rep. on Sen. Bill No. 475 (2001-2002 Reg. Sess.) as amended Aug. 27, 2001; Assem. Com. on Appropriations, Rep. on Sen. Bill No. 475 (2001-2002 Reg. Sess.) as amended Aug. 27, 2001; Assem. Com. on Judiciary, Rep. on Sen. Bill No. 475 (2001-2002 Reg. Sess.) Aug. 21, 2001; Senate Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 475 (2001-2002 Reg. Sess.) May 15, 2001; Sen. Com. on Judiciary, Rep. on Sen. Bill No. 475 (2001-2002 Reg. Sess.) Apr. 17, 2001.) The failure to amend section 1287 in 2001 was the result of a legislative oversight. Upon issuance of the remittitur, the trial court is to proceed pursuant to section 1287.

IV. DISPOSITION
The judgment is reversed. The trial court is directed to vacate the arbitration award and proceed pursuant to Code of Civil Procedure section 1287. Defendant, Ann Summers, Ltd., is to recover its costs on appeal from plaintiff, Celine Gueyffier.
I concur: KRIEGLER, J.
MOSK, J., Concurring.
I concur in order to add a few observations.
Paragraph 22.6 of the operative agreement provides that "[t]his agreement shall *317 be governed by and construed in accordance with the laws of England." Paragraph 20.1 provides that "[t]he substantive law applied in such arbitration shall be as provided in 22.6 below." These clauses do not indicate clearly that the parties intended to have the law of England govern the arbitration process, and whether they couldat least as to vacaturis problematic. Generally, in international arbitration it is presumed that the law of the seat of the arbitrationthe lex arbitrigoverns the arbitration. (See Redfern and Hunter, Law and Practice of International Commercial Arbitration (4th ed.2004) §§ 2-05-2-21, pp. 78-88; §§ 6-12-6-17, pp. 271-273; Born, International Commercial Arbitration (2d ed.2001) pp. 411-413.) Because the parties did not clearly specify a law to govern the arbitration or contend that English law applies, the law of the place of the arbitration should govern.[1]
As the majority notes, California authorities have held that the Federal Arbitration Act (9 U.S.C., § 1 et. seq.) does not preempt state law in connection with vacating awards. There have been some authorities to the contrary elsewhere. (See discussion of the authorities in Gross, Over-Preemption of State Vacatur Law: State Courts and the FAA (2004) 3 J. Am. Arb. 1; Born, International Commercial Arbitration, supra, at pp. 708-709.) The applicable provisions for vacating an award under the Federal Arbitration Act, 9 U.S.C., section 10 [vacate an award "[w]here the arbitrators exceeded their powers"] and under Code of Civil Procedure section 1286.2, subdivision (4) [ground for vacating the award is when "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted"] would both result in a vacation of the award here.
As discussed by the majority, the arbitrator exceeded his authority by disregarding an express provision of the agreement that limited his powers. (See O'Flaherty v. Belgum (2004) 115 Cal.App.4th 1044, 9 Cal.Rptr.3d 286.) Accordingly, the judgment confirming the award should be reversed and the trial court should proceed under Code of Civil Procedure section 1287. (See Jordan v. Department of Motor Vehicles (2002) 100 Cal.App.4th 431, 456,123 Cal.Rptr.2d 122.)
NOTES
[1] As will be noted, both Ms. Gueyffier and Ann Summers, Ltd. filed petitions concerning the arbitration award. Ann Summers, Ltd. filed a petition seeking to set aside the award. Because she filed the initial petition in the cross-proceedings, for purposes of clarity, we will refer to Ms. Gueyffier as plaintiff and Ann Summers, Ltd. as defendant.
[2] All further statutory references are to the California Code of Civil Procedure except where otherwise noted.
[3] In 1993, section 1286.2 was amended to state: "Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: [¶] (a) The award was procured by corruption, fraud or other undue means. [¶] (b) There was corruption in any of the arbitrators. [¶] (c) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (e) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶H] (f) An arbitrator making the award was subject to disqualification upon grounds specified in subdivision (e) of Section 1282, but failed upon receipt of timely demand to disqualify himself or herself as required by those provisions. However, this subdivision does not apply to arbitration proceedings conducted under a collective agreement between employers and employees or between their respective representatives." (Stats. 1993, ch. 768, § 5, pp. 4261-4262.) In 1993, section 1286 was amended to provide: "Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: [¶] (a) The award was procured by corruption, fraud or other undue means. [¶] (b) There was corruption in any of the arbitrators. [¶] (c) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (e) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (f) An arbitrator making the award was subject to disqualification upon grounds specified in Section 1281.9, but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives." (Stats. 1997, ch. 445, § 4.)
[4] The Legislative Counsel's Digest for Senate Bill No. 475 states: "Existing law establishes standards for arbitration, [¶] This bill would require arbitrators to comply with ethical standards adopted by the Judicial Council beginning July 1, 2002. This bill would also require the Judicial Council, consistent with the standards established for arbitrators in the judicial arbitration program, to adopt ethics standards that address the disclosure of conflicts of interest, including prior service as an arbitrator or other dispute resolution neutral entity, disqualifications, the acceptance of gifts, and the establishment of future professional relationships. The bill would also specify the grounds upon which a proposed neutral arbitrator may be disqualified and the procedure to do so including the form of the petition to disqualify. [¶] Existing law requires the court to vacate an arbitration award if the arbitrator, upon receipt of a timely demand, fails to disqualify himself or herself from the proceedings. [¶] This bill would also require the courts to dismiss an arbitration award if the arbitrator failed to disclose, within the time required for disclosure, grounds for disqualification of which the arbitrator was then aware. This bill would also make a declaration of legislative intent regarding the grounds for vacating arbitration awards." (Legis. Counsel's Dig., Sen. Bill No. 475 (2001-2002 Reg. Sess.) Stats.2001, ch. 362.)
[5] Section 8, the uncodified provision of Senate Bill No. 475, states, "It is the intent of the Legislature that the grounds for vacatur added by subparagraph (A) paragraph (6) of subdivision (a) of Section 1286.2, is declarative of existing case law which provides that an arbitration award may be vacated when a neutral arbitrator fails to disclose a matter that might cause a reasonable person to question the ability of the arbitrator to conduct the arbitration proceeding impartially." (Legis. Counsel's Dig., Sen. Bill No. 475 (2001-2002 Reg. Sess.) Stats.2001, ch. 362.)
[1] The agreement provided that the arbitration "proceedings shall be held in the city nearest the Franchisee's Store in which the AAA maintains an office and facilities for conducting arbitration." The arbitrator stated, "I hereby certify that, for purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Los Angeles, California, U.S.A."