**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DIMITRIOS PETER BILLER,
                *Plaintiff-Appellant,*

            v.

TOYOTA MOTOR CORPORATION;
TOYOTA MOTOR SALES, U.S.A.,
INC.; CHRISTOPHER REYNOLDS; JANE
HOWARD MARTIN; ERIC TAIRA;
DIAN OGILVIE; ALICIA MCANDREWS,
                *Defendants-Appellees.*

No. 11-55587

D.C. No.
2:09-cv-05429-
GHK-RZ

OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted
December 8, 2011—Pasadena, California

Filed February 3, 2012

Before: John T. Noonan, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

Dimitrios P. Biller, Pacific Palisades, California, appellant, Pro Se.

David L. Schrader, Roger K. Smith, Morgan, Lewis & Bockius, Los Angeles, California, for the appellees.

## OPINION

GOULD, Circuit Judge:

Dimitrios P. Biller ("Biller") appeals the district court's order affirming an arbitration award and permanent injunction

against him in favor of his former employer, Toyota Motor Corp. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## A

Appellant Biller worked as in-house counsel for Toyota Motor Sales ("TMS"), a subsidiary of Toyota Motor Corp., from 2003 to 2007, with responsibilities on product liability matters. In 2007, Biller presented TMS with a claim asserting, *inter alia*, constructive wrongful discharge related to TMS's alleged unethical discovery practices. TMS and Biller settled the claims, and, in September 2007, the parties signed a Severance Agreement, in which Biller agreed 1) to give a broad release of his claims relating to his employment with and separation from TMS; 2) to protect and not to disclose Toyota's Confidential Information, a term defined in the Severance Agreement;[1] 3) to return to TMS all of Toyota's Confidential Information in his possession; and 4) not to copy that Confidential Information.

---

[1] The Severance Agreement defines Confidential Agreement, in relevant part, as follows:

For the purposes of this Agreement, "Confidential Information" includes, without limitation, all information given or otherwise transmitted to Associate by TMS or TMS Releases in the course of Associate's legal representation of TMS or TMS Releases, all information classified as confidential or protected by TMS, information furnished to Associate by TMS or TMS Releases or otherwise obtained by Associate, transmitted in writing, orally, visually (i.e. video terminal display) or on magnetic media, including all financial and credit information, product plans and technologies, all types of trade secrets (as defined by the Uniform Trade Secrets Act), know-how, ideas, concepts, inventions, designs, drawings, sketches, flow charts, blue prints, diagrams, manufacturing and test data, engineering knowledge, computer programs, progress reports, methods research, procurement procedures, marketing and sales activities and procedures, pricing, distribution personnel data, payroll data, employee benefits, employment policies, privileged communications, attorney-client communications, attorney work product, litigation and case handling or strategies, vendor data, contracts and any other confidential or proprietary information relating to TMS or TMS Releases.

With respect to Dispute Resolution, the parties agreed to arbitrate "all known and unknown" claims that relate, *inter alia*, to the interpretation, application, or alleged breach of the Severance Agreement. The relevant Arbitration Rules and Procedures in the Severance Agreement state that:

> The arbitration shall be held in accordance with the rules and regulations of Judicial Arbitration and Mediation Services (JAMS) pertaining to employment disputes. . . . If the dispute is not resolved in informal discussions or at mediation, the arbitration shall be final and binding upon the Parties and shall be the exclusive remedy for all Arbitrable Claims. The Arbitrator is required to follow the applicable law and case precedent of the jurisdiction where [Biller] last worked for TMS and will have full authority to award relief available to be awarded had the dispute been brought in any other forum such as a federal or state court. The Arbitrator will issue with his/her award a written discussion sufficient to permit limited judicial review to enforce or vacate the arbitration award. . . .

The relevant written JAMS policy states:

> The Award will consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. The Award shall also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the award is based.

Finally, with respect to the Governing Law, the Severance Agreement states:

> This Agreement shall be governed by and construed in accordance with the laws of California; provided,

however, that the arbitration agreement [in the Dispute Resolution clause] of this Agreement will be governed by the Federal Arbitration Act unless it is found by a decision maker of competent jurisdiction not to be governed by the Federal Arbitration Act, in which case it will be governed by California law.

After leaving TMS, Biller started Litigation, Discovery & Trial Consulting ("LDTC"), a consulting business providing seminars on various legal topics. On the LDTC website, Biller used information about his work on TMS products liability litigation, that TMS believed to be Confidential Information and allegedly to violate the attorney-client privilege. In November 2008, TMS sued in state superior court seeking a temporary restraining order ("TRO") and permanent injunctive relief to prevent Biller from violating the attorney-client privilege. Biller filed a cross-complaint for a TRO and a permanent injunction prohibiting TMS from interfering with his business practices and those of LDTC.

TMS moved to compel arbitration under the terms of the Severance Agreement. The state superior court granted the motion, and the parties were ordered to arbitration, with the arbitrator to determine first whether the claims were arbitrable under the Severance Agreement. The Honorable Gary L. Taylor (ret.) ("the Arbitrator") was appointed as the mutually-agreed-upon JAMS arbitrator.

In July 2009, Biller, on behalf of himself and LDTC, filed a complaint against TMS in the Central District of California, alleging violations under the RICO Act, constructive wrongful discharge, intentional infliction of emotional distress, and defamation *per se*. TMS moved to dismiss the RICO Act claim brought by LDTC and to compel arbitration under the Severance Agreement as to the claims brought by Biller individually. In November 2009, the district court dismissed the RICO Act claim (dismissing with prejudice LDTC from the action), and granted TMS's motion to compel arbitration as to

Biller's individual claims. The parties stipulated that the arbitration of Biller's federal court claims would be consolidated with the arbitration of TMS's state court claims, both matters before the parties' chosen JAMS Arbitrator.

Pursuant to the consolidated arbitration, TMS submitted claims against Biller for 1) breach of contract, 2) conversion, and 3) statutory computer fraud. Biller submitted claims against TMS for 1) a violation of civil RICO, 2) constructive wrongful termination, 3) intentional infliction of emotional distress, and 4) defamation *per se*. Biller also submitted cross-claims against TMS for 1) unfair competition, 2) intentional economic interference, and 3) fraud and/or false promises, but during the arbitration hearing Biller withdrew his cross-claims for unfair competition and intentional economic interference.

After briefing on the validity and enforceability of the Severance Agreement, the Arbitrator concluded, in March 2010, that the Severance Agreement was valid and enforceable. In April 2010, TMS filed a motion for summary judgment on Biller's civil RICO Act and intentional infliction of emotional distress claims. After permitting Biller to conduct discovery for four months, the Arbitrator granted TMS's motion in October 2010.

An arbitration hearing was conducted between November 15, 2010 and November 30, 2010. The parties submitted briefs and presented 20 witnesses. After hearing closing arguments for a full day on November 30, 2010, the Arbitrator issued his Final Award along with a Permanent Injunction. The Arbitrator decided that Biller was liable to TMS on all of its claims (breach of contract, conversion, and unauthorized computer access), and that TMS was entitled to injunctive relief, punitive damages, and liquidated damages, as agreed upon in the Severance Agreement. The Arbitrator awarded TMS $2.5 million in liquidated damages and $100,000 in punitive damages.

The Arbitrator also concluded that Biller had a continuing duty to safeguard and not to disclose TMS's Confidential Information, and issued a Permanent Injunction prohibiting Biller from, *inter alia*, disclosing Confidential Information and destroying Confidential Information in his possession and ordering Biller to return to TMS all copies of Confidential Information in his possession or control. The Permanent Injunction also required Biller to permit TMS to inspect fully and forensically search his computers' hardware for Confidential Information, to copy any such Confidential Information found, and to delete such Confidential Information from Biller's hardware. The Arbitrator found that Biller's remaining claims of fraud and/or false promises and defamation *per se* were not supported by the evidence. Accordingly, the Final Award resolved all of the claims submitted for decision.

In January 2011, TMS moved to confirm the Final Award and the Permanent Injunction in the district court. The district court reviewed the Final Award under the Federal Arbitration Act ("FAA") and held that 1) Biller did not show that the Arbitrator demonstrated manifest disregard of the law concerning his affirmative defenses raised under California law; 2) the Arbitrator was not required, under the FAA, to provide a written explanation for his rulings and any purported failure to do so was not grounds for vacatur under the FAA; 3) in any case, the Arbitrator's written explanation sufficiently addressed Biller's affirmative defenses under state law; 4) manifest disregard of the *facts*, including any failure by the Arbitrator to make findings in light of Biller's evidence offered under California Rule of Evidence 956's crime/fraud attorney disclosure exception showing TMS's purported discovery misconduct,[2] is not grounds for vacatur; and 5) Biller

---

[2]Biller argued before the Arbitrator that his ethical duty of confidentiality was relieved by the fraud/crime exception in California Evidence Code 956, which states: "There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." The Arbitrator, solely for the pur-

did not show that the Arbitrator was partial to TMS. The district court confirmed the Final Award, granted the Permanent Injunction, and denied Biller's request for vacatur of the Final Award.

TMS also moved to confirm the Final Award and Permanent Injunction in the state court. The state superior court granted TMS's motion in May 2011. Biller then argued that, in moving to confirm the Final Award and Permanent Injunction, TMS had taken a position in state court that conflicted with TMS's position before the district court, and Biller moved, in the district court, for an order to void the judgment and vacate the Final Award under Fed. R. Civ. P. 60(b),[3] to award sanctions under Fed. R. Civ. P. 11, and to find TMS in contempt of the Permanent Injunction. Because Biller had

---

pose of the arbitration proceedings and in the event that it was necessary for the Arbitrator to decide whether TMS has engaged in discovery misconduct, permitted Biller to conduct discovery pursuant to California Evidence Code 956. The Arbitrator permitted Biller to present his evidence, but then declined to make a ruling about alleged misconduct because "the development of the arbitration hearing did not require such a ruling."

[3]Fed. R. Civ. P. 60(b) states:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

already filed his notice of appeal in this court, however, the district court denied Biller's Rule 60(b) and Rule 11 motions on jurisdictional grounds. In the alternative, the district court ruled that Biller's Rule 11 motion was procedurally improper because Biller did not give TMS the requisite time to withdraw or correct the challenged action under Fed. R. Civ. P. 11(c)(2).

As to his motion for contempt, Biller argued before the district court that TMS had violated the Permanent Injunction by improperly keeping and deleting five documents during its search of his computer. The district court requested further briefing on the documents and ordered the parties to meet and confer. The parties reconvened before the district court in July 2011, and the district court denied Biller's motion for contempt finding that Biller did not show that TMS had failed to comply with the Permanent Injunction.

Biller now appeals the district court's confirmation of the Final Award and the district court's denial of his motion for contempt.

**B**

We review *de novo* the district court's confirmation of the Final Award. *Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277, 1284 (9th Cir. 2009). "Our review is limited by the [FAA], which enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award. Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard [and] a court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11." *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009) (citations omitted).

We review the district court's denial of Biller's motion for contempt for abuse of discretion. *Hallet v. Morgan,* 296 F.3d

732, 749 (9th Cir. 2002) ("We may reverse only if the district court has misapprehended the law or rested its decision on a clearly erroneous finding of a material fact.").

## C

### I.   The FAA Governs Review of the Arbitration Agreement.

We first consider whether the Severance Agreement called for arbitration under the FAA or under California law. Biller contends, in essence, that the district court erred by considering the Final Award under the limited review authorized by the FAA rather than under the more expansive review authorized by California Arbitration Act ("CAA") in cases where the parties contract for such expansive judicial review.

[1] "Under California contract law, 'if the language [of a contract] is clear and explicit, and does not involve an absurdity' the language must govern the contract's interpretation." *Comedy Club,* 553 F.3d at 1285 (alteration in original) (quoting Cal. Civ. Code § 1638). "Moreover, when a contract is written, 'the intention of the parties is to be ascertained from the writing alone, if possible.' " *Id.* (quoting Cal. Civ. Code § 1639). Accordingly, we will look first to the plain language of the Severance Agreement to determine whether the FAA or the CAA governs.

[2] The Dispute Resolution clause[4] of the Severance Agreement expressly states:

---

[4]Biller suggests that the Severance Agreement should be void because there is a mistake in the Governing Law Clause which makes reference to the Dispute Resolution Clause as existing in Paragraph 7, when in fact it exists in Paragraph 6. Biller characterizes this mistake as a material mistake of fact. Under California law, "[m]istake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: 1) An unconscious ignorance or forgetfulness

> This Agreement shall be governed by and construed in accordance with the laws of California; provided, however, that *the arbitration agreement [in the Dispute Resolution clause] of this Agreement will be governed by the Federal Arbitration Act unless it is found by a decision maker of competent jurisdiction not to be governed by the Federal Arbitration Act, in which case it will be governed by California law*. (emphasis added).

Consistent with state law regarding contract interpretation, the plain language of the Severance Agreement is unambiguous and shows the parties' intent that while contract terms are generally to be governed by California law, any arbitration more specifically is to be conducted under the FAA unless "a decision maker of competent jurisdiction" finds that it should be governed by the CAA. Biller neither alleges nor shows that any decision maker determined that the arbitration agreement should not be governed by the FAA. Absent such a determination, we conclude that the plain language of the Severance Agreement requires that the FAA governs the arbitration proceedings here.

Alternatively, the district court noted that during the proceedings below, "[Biller] took the position that the FAA supplied the relevant framework for confirming or vacating the Arbitration Award. In fact, [Biller] sought affirmative relief under the FAA[, and a]ll Parties agreed that the FAA was controlling before [the district court]." Stated another way, in opposing the confirmation of the Arbitration Award before

---

of a fact past or present, material to the contract; or, 2) Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." Cal. Civ. Code § 1577. Biller's argument that this numbering error should justify nullification of the contract is unpersuasive because he presents no evidence that the mistake was material to either his or TMS's understanding of either the Governing Law Clause or the Dispute Resolution Clause.

the district court, Biller did not contend that the CAA governed and the FAA did not. To the extent that Biller now raises this argument, with respect to the confirmation of the Final Award, for the first time before us, we deem it waived. *See Hillis v. Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010) ("Th[is] argument[ is] raised for the first time on appeal, and because [it was] never argued before the district court, we deem [it] waived.").

## II. The FAA Authorizes Limited Review of the Final Award.

**[3]** We next consider Biller's argument that the district court erred by not conducting a merits review of the Final Award, urging that was required by the Severance Agreement. In *Kyocera Corp. v. Prudential-Bache Trade Serv. Inc.*, 341 F.3d 987 (9th Cir. 2003) (en banc), we considered an arbitration agreement that expanded the grounds on which a court could vacate, modify, or correct an arbitration award under the FAA. *Id.* at 990-91. Specifically, the arbitration agreement there permitted the court to "vacate, modify or correct any award: (i) based upon any of the grounds referred to in the [FAA], (ii) where the arbitrators' findings of fact are not supported by substantial evidence, or (iii) where the arbitrators' conclusions of law are erroneous." *Id.* We held that:

> The [FAA], 9 U.S.C. §§ 1-16, enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award. *Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard.* Because the Constitution reserves to Congress the power to determine the standards by which federal courts render decisions, and because Congress has specified the exclusive standard by which federal courts may review an arbitrator's decision,

we hold that private parties may not contractually impose their own standard on the courts.

*Id.* at 994 (emphasis added). We went on to note that under the FAA, "if a party seeks a judicial order confirming an arbitration award, the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 [vacatur] and 11 [modification] of [the FAA]." *Id.* at 997 (internal quotation marks and citations omitted). Because Biller seeks vacatur of the Final Award, we limit our discussion hereafter to § 10 of the FAA.

Under § 10 of the FAA, vacatur is permitted only:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Under the FAA:

[A] federal court [may] correct a technical error, [ ]strike all or a portion of an award pertaining to an issue not at all subject to arbitration, and[ ] vacate an award that evidences affirmative misconduct in the

arbitral process or the final result or that is completely irrational or exhibits a manifest disregard for the law. These grounds afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures.

*Kyocera*, 341 F.3d at 997-98.

Five years after our holding in *Kyocera*, the Supreme Court took up the issue of the proper scope of review of arbitral awards under the FAA in *Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008) ("*Hall Street*"). In *Hall Street*, the Court considered whether an arbitration agreement could expand the scope of judicial review for vacatur of an arbitral award to include review for legal error along with the enumerated grounds in § 10 of the FAA. The Court agreed with our holding in *Kyocera* and held that "§ [ ]10 . . . provide[s] the FAA's exclusive grounds for expedited vacatur . . . ." *Id.* at 584.

**[4]** *Kyocera*'s and *Hall Street*'s holdings then stand for the proposition that § 10 of the FAA provides the exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award, and that such review under the FAA is limited. Indeed, § 10 of the FAA provides no authorization for a merits review. Under this framework we reject Biller's argument that the district court erred by not conducting a merits review of the Final Award.

**[5]** Biller's reliance on *Cable Connection, Inc. v. DirectTV, Inc.*, 44 Cal.4th 1334 (2008) is misplaced, because the FAA governs the arbitration agreement, as we have already decided. In *Cable Connection*, the California Supreme Court considered an arbitration agreement under the CAA. The California Supreme Court relied on the United States Supreme Court's statement in *Hall Street* that "[t]he FAA is not the only way into court for parties wanting review of arbitration

awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable," *Hall Street*, 552 U.S. at 59, to conclude that *Hall Street* did not foreclose a more searching merits review of arbitral awards when done so under authority other than the FAA.[5] The state supreme court went on to hold that "the CAA established the statutory grounds for judicial review with the expectation that arbitration awards are ordinarily final and subject to a restricted scope of review, but that parties may . . . provid[e] for review of the merits in the arbitration agreement." *Cable Connection*, 44 Cal.4th at 1364. The parties here might have chosen to expand the scope of judicial review by providing for a merits review of the arbitration award and designating the California Arbitration Act as the controlling law under which review of an arbitral award was to occur. They did not do so. Instead, they specified that the FAA governed the arbitration provision. In keeping with our precedent in *Kyocera*, the parties, by choosing the FAA as the vehicle for judicial review, may not by contract expand the scope of judicial review beyond that which the FAA authorizes. *Kyocera*, 341 F.3d at 994 ("[W]e hold that private parties may not contractually impose their own standard on the courts."). In light of our conclusion that the FAA governs

---

[5]"[W]e do not believe the *Hall Street* majority intended to declare a policy with preemptive effect in all cases involving interstate commerce. *Hall Street* was a federal case governed by federal law; the court considered no question of competing state law. It reviewed the application of FAA provisions for judicial review that speak only to the federal courts. The court unanimously left open other avenues for judicial review, including those provided by state statutory or common law. While the court, of course, decided nothing about the viability of these alternatives, their mention in the majority opinion indicates that *Hall Street*'s holding on the effect of the FAA is a limited one. . . . We conclude that the *Hall Street* holding is restricted to proceedings to review arbitration awards under the FAA, and does not require state law to conform with its limitations. Furthermore, a reading of the CAA that permits the enforcement of agreements for merits review is fully consistent with the FAA policy guaranteeing the enforcement of private contractual arrangements." *Cable Connection*, 44 Cal.4th at 1354-55 (internal quotation marks and citations omitted).

judicial review of the Severance Agreement, the California Supreme Court's decision in *Cable Connection* is inapposite to the facts presented here.

## III.    The Arbitrator Did Not Manifestly Disregard the Law Governing the Severance Agreement.

**[6]** We next address Biller's argument, notwithstanding his contention that the CAA governs, that within the context of the FAA, vacatur is appropriate because the Arbitrator, in determining the Final Award, manifestly disregarded California state law. Under § 10 of the FAA, vacatur is appropriate where it is evident that "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)). "[A]rbitrators exceed their powers in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law." *Kyocera*, 341 F.3d at 997 (internal quotation marks and citations omitted). "Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (citing *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)). "To vacate an arbitration award on this ground, '[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it.' " *Id.* "An award is completely irrational 'only where the arbitration decision fails to draw its essence from the agreement.' " *Lagstein*, 607 F.3d at 642 (quoting *Comedy Club*, 553 F.3d at 1288 (citation and alterations omitted)). "An arbitration award 'draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Lagstein*, 607 F.3d at 642 (alterations in original) (quoting *Bosack*, 586 F.3d at 1106)).

Biller argues that the Arbitrator exceeded his powers under the Severance Agreement first by not issuing a writing sufficient to provide for judicial review and second by failing to address Biller's affirmative defenses under California law.[6] We consider each contention in turn.

### 1. The Arbitrator's writing was sufficient under the terms of the Severance Agreement.

**[7]** The Severance Agreement required the Arbitrator to "issue with his/her award a written discussion sufficient to permit limited judicial review to enforce or vacate the arbitration award." Biller argues that the Arbitrator exceeded his power under state law by failing to provide a written statement, consistent with the terms of the Severance Agreement, sufficient to explain why, under California law, he denied Biller's affirmative defenses. Relying on *Bosack*, the district court found that FAA did not permit vacatur merely on the failure of an arbitrator to provide a written explanation of his/her award. In *Bosack*, we explained that "[a]rbitrators are not required to set forth their reasoning supporting an award. An arbitrators' award may be made without explanation of their reasons and without a complete record of their proceedings. [But, i]f they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." *Id.* (internal quotation marks and citations omitted). Thus *Bosack* forecloses Biller's contention that the Arbitrator's purported failure to provide a written decision to facilitate judicial review, even though required by the Severance Agreement, would alone support vacatur under the FAA.

**[8]** The district court concluded that in any case, in keeping with the terms of the Severance Agreement, the Arbitrator's written decision was in fact sufficient to provide for the

---

[6]Biller does not argue on appeal that the Final Award was completely irrational. We address whether the Final Award was issued in manifest disregard of the law.

limited review authorized by the FAA, namely whether the Arbitrator manifestly disregarded the law or made an irrational decision. We agree with the district court's conclusion. Biller's argument focuses on the writing's ability to facilitate a judicial merits review, but as stated above, the FAA does not authorize a judicial merits review of arbitration awards, and the writing submitted by the Arbitrator was sufficient to determine whether vacatur was warranted under the limited scope of judicial review authorized in the FAA.

### 2. The Arbitrator did not manifestly disregard California law in addressing Biller's affirmative defenses.

[9] Biller next contends that the Arbitrator's decision demonstrated a manifest disregard of the law because the Arbitrator did not apply California law regarding his affirmative defenses of unclean hands and equitable estoppel. "For an arbitrator's award to be in manifest disregard of the law, it must be clear from the record that the arbitrator recognized the applicable law and then ignored it." *Bosack*, 586 F.3d at 1104; *see also Mich. Mut. Ins. Co.*, 44 F.3d at 832.

In *Comedy Club, Inc.*, we considered the scope of the manifest disregard of the law ground for vacatur. 553 F.3d 1277. That case involved an arbitral award issued after a dispute between Comedy Club, Inc. ("CCI"), the owner and operator of restaurants and comedy clubs nationwide, and Improv West, the founder and creator of the Improv Comedy Club. *Id.* at 1281. CCI contracted with Improv West to open several comedy clubs using the Improv trademark and agreed not to open any non-Improv comedy clubs. *Id.* After CCI did not open Improv clubs within the time frame provided by contract, Improv West withdrew CCI's license to use the Improv trademark and rights to open additional Improv clubs. *Id* at 1282. CCI filed suit in the district court seeking a declaratory judgment, *inter alia*, nullifying the contractual covenant that CCI could not open any non-Improv comedy clubs. *Id.* Pursu-

ant to the contract, the district court ordered the parties to arbitration, and the arbitrator entered a partial arbitration award that, *inter alia*, enjoined CCI and its "Affiliates" from opening or operating comedy clubs under other names for the duration of the Trademark Agreement. *Id.* at 1282-83. The district court then confirmed the partial arbitration award. *Id.*

On appeal, we held that the arbitrator acted in manifest disregard for California law, the relevant law there, where he issued a partial arbitration award enjoining CCI's Affiliates, a term broadly defined in the contract that included "family members, family members of shareholders all collateral relatives, former spouses, and all collateral relatives of former spouses," from opening or operating comedy-related clubs or restaurants. We examined California law regarding non-compete clauses and concluded that because "collateral relatives are not in privity with the Trademark Agreement signatories, or with CCI shareholders, partners or persons . . . [u]nder California law, the arbitrator lacked the authority to enjoin these non-parties from owning or operating comedy-related businesses or restaurants." *Id.* at 1287. Thus, the arbitrator there ignored the relevant law.

In *Lagstein*, we considered the district court's vacatur of an arbitral award based on manifest disregard of the law grounds. 607 F.3d 634. We reversed the district court's vacatur, stating that manifest disregard of the law "is a high standard for vacatur; '[i]t is not enough . . . to show that the panel committed an error-or even a serious error.' " *Id.* at 641 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct. 1758, 1767 (2010)). Indeed, we found significant the district court's failure to cite "any applicable law that the panel recognized and ignored." *Id.* We reversed the district court's vacatur of the arbitral award, concluding that because "the district court's vacatur of the overall awards was not supported by any permissible ground under the [FAA] or the controlling decisions interpreting it." *Id.* at 642.

Biller contends that the Arbitrator acted in manifest disregard of the law by not expressly addressing Biller's affirmative defenses of unclean hands and equitable estoppel under California law. It is against the backdrop of specific state law that we consider whether the Arbitrator acted in manifest disregard of the law to permit vacatur under the FAA.

### a.   Unclean Hands

Under California law regarding the applicability of the unclean hands defense, "[t]he focus is the equities of the relationship between the parties, and specifically whether the unclean hands affected the transaction at issue." *Jaramillo v. County of Orange*, 250 Cal.App.4th 811, 820 (2011). The Arbitrator found that Biller had violated his attorney's duty by "intentionally and repeatedly disclos[ing] confidential information and documents in violation of ethical, statutory, and contractual prohibitions, as well as court and arbitration injunctions." The Arbitrator declined to make factual findings on Biller's proffered crime/fraud evidence which purportedly showed that TMS engaged in illegal activities and other misconduct during the discovery process in its products liability litigation. Concluding that such a finding was not germane to the claims, the Arbitrator concluded that Biller's "unprecedented ethical violations" were unjustified, without any express reference to unclean hands.[7]

---

[7]Biller alleges that the Arbitrator misstated the law regarding an attorney's continuing duty of confidentiality. However, even misstatements of the law followed by erroneous application of the law do not provide grounds upon which a reviewing court may vacate an arbitral award under the FAA. Our precedent is quite clear that manifest disregard of the law for the purposes of the FAA occurs only where there is evidence that the Arbitrator knew the law but ignored it nonetheless. *See Lagstein*, 607 F.3d at 641 (quoting *Kyocera*, 341 F.3d at 997 (citations omitted)) ("[A]rbitrators 'exceed their powers' . . . not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,' or exhibits a 'manifest disregard of law.' "). Here, perhaps the Arbitrator misunderstood the law and misapplied it, but we cannot conclude that the Arbitrator ignored the law.

**[10]** The district court found that the Arbitrator implicitly addressed Biller's unclean hands defense, stating that although the Arbitrator "used different language than [Biller] to describe the issues," the Arbitrator responded in substance to Biller's unclean hands affirmative defense by essentially pointing out that in light of the lack of justification for Biller's actions, the equities precluded Biller's assertion of the unclean hands affirmative defense under California law. The district court found no manifest disregard of the applicable law, and that the FAA did not permit vacatur under these circumstances. We agree.

California law precludes an unclean hands affirmative defense where there is no establishment of improper conduct to begin with. *See Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal.App.4th 970, 978 (1999) ("The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim."). Moreover, "[w]hether the doctrine of unclean hands applies is a question of fact." *Id.* Notwithstanding Biller's evidence of TMS's alleged discovery misconduct, the Arbitrator declined to make factual findings regarding TMS's culpability as alleged by Biller. Rather, the Arbitrator expressly decided that Biller's actions were not justified in light of his ethical violations. This is probative that the Arbitrator was aware of the relevant unclean hands law and did not in fact ignore it.

Moreover, "[t]he misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice." *Id.* at 979. Biller contends that he disclosed the Confidential Information to reveal Toyota's misconduct for the purpose of revealing continuing misconduct. But some of Biller's disclosures bore no relationship to Biller's stated goal and instead appeared to stem from Biller's desire to advance his career

after leaving TMS. Specifically, TMS's breach claims stem, at least in part, from Biller's use of the Confidential Information on Biller's fledgling LDTC website and in Biller's presentation of professional seminars, pursuits whose purpose was Biller's own professional enhancement and personal gain from his consulting firm. The Arbitrator's conclusion that given the facts presented Biller's actions were unjustified suggests that, consistent with state unclean hands law, the Arbitrator concluded that the equities did not favor a finding in Biller's favor.

Moreover, the district court suggested that it may be that in not crediting Biller's evidence of TMS's allegedly fraudulent and criminal actions surrounding its discovery practices, the Arbitrator manifestly disregarded the facts. But whether or not that characterization is correct, the district court also correctly pointed out that we have previously held that "[m]anifest disregard of the facts [alone] is not an independent ground for vacatur in this circuit." *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003).

### b. Equitable Estoppel

Under California law, equitable estoppel "requires: (1) the party to be estopped knew the facts; (2) the other party was ignorant of the true facts; (3) the party intended his [or her] conduct would be acted upon, or acted in a manner that the party asserting the estoppel had a right to believe it so intended; and (4) the other party relied upon the conduct to his [or her] injury. Where one of the elements is missing, there can be no estoppel." *Dollinger DeAnza Assoc. v. Chicago Title Ins. Co.*, 199 Cal.App.4th 1132, 1155 (2011) (internal quotation marks and citations omitted).

Biller raised equitable estoppel as an affirmative defense, arguing that TMS falsely represented to Biller that he had to remove TMS's confidential information from the LDTC website under Rule 1.6(a) of the ABA Model Rules. ABA Model

Rule 1.6(a) prohibits a lawyer from revealing information relating to representation without the written consent of the client. Model Rule of Prof'l Conduct 1.6 (1983). Rule 1.6(b)(5) includes an exception to permit the lawyer "to establish a claim or defense . . . in a controversy between the lawyer and the client, to establish a defense to a . . . civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client." We cannot discern from Biller's papers on appeal precisely what Biller contends is the controlling relevance of ABA Model Rule 1.6 to the issues before us. Biller's argument seems to be that TMS should be equitably estopped because it knew the truth that Rule 1.6(a) did not preclude Biller from including the information on the LDTC website, but nonetheless represented to Biller that Rule 1.6(a) supported a violation of the confidentiality clause in the Severance Agreement.

**[11]** Biller contends that the Arbitrator did not address this defense in his written decision which in turn reflected the Arbitrator's manifest disregard of the law. The district court held that the Arbitrator implicitly rejected Biller's equitable estoppel defense "by concluding that [Biller's] disclosures went beyond those that TMS had permitted, and based on [Biller's] overriding ethical duty as an attorney." The district court did not err in coming to this conclusion.

**[12]** It is not clear why Biller, an experienced attorney, would have reasonably relied upon TMS's alleged representation of the scope of Rule 1.6(a) to believe that he needed to remove the confidential information from the website. The Arbitrator implicitly found that Biller did not establish the requisite reliance to support his equitable estoppel claim. The Arbitrator concluded that Biller was well aware of his ethical duty to TMS and that nothing justified Biller's breach of that ethical duty, not even TMS's allegedly false representations to Biller about the scope of his ethical duties. Biller does not show that the Arbitrator was aware of the governing state law,

but ignored it in rendering his decision and so vacatur under the FAA was not warranted.

## IV. The district court did not err in denying Biller's contempt motion.

Finally, Biller argues that the district court erred in denying his motion for contempt on the basis that TMS did not violate the Permanent Injunction when it reviewed and deleted certain documents from Biller's computer files. Biller contends that TMS improperly collected and retained five documents—consisting of a letter from Congressman Towns to TMS and four attachments—from his computer in violation of the Permanent Injunction. According to Biller, the attachments consisted of "four e-mails and memos that [Biller] wrote while [Biller] worked at TMS related to discovery practices." Biller also stated, "I am very familiar with the attachments . . . because those documents are the product of my attorney work-product."

[13] In denying Biller's motion, the district court determined that the four attachments contained Biller's own work product from his time as TMS's counsel, and that the letter referred to the attached materials. The district court concluded that although the letter was first made public on the Internet by Congress, TMS protested and requested that the letter be taken down, a request that Congress granted. In these circumstances, we conclude that TMS preserved its right to maintain the confidentiality of the letter under the Severance Agreement. Accordingly, the district court correctly concluded that these documents were Confidential Information within the scope of the Permanent Injunction.

[14] As stated above, Biller does not contest that the attachments were prepared while he was employed by TMS. Nonetheless, he argues that he conducted the research "for his own education" rather than for the benefit of TMS, and so the documents should not qualify as TMS's proprietary confiden-

tial information. We conclude that this argument has no merit. Biller prepared the documents regarding matters related to TMS while employed by TMS, and under the plain terms of the Severance Agreement, the documents qualified as Confidential Information. Under the plain terms of the Permanent Injunction, TMS was entitled to delete the documents from Biller's computer. The district court did not abuse its discretion in denying Biller's motion for contempt.

**AFFIRMED.**