**ASPIC ENGINEERING AND CONSTRUCTION COM- PANY, Plaintiff,**

**v.**

**ECC CENTCOM CONSTRUCTORS, LLC and ECC International, LLC, Defendants.**

**Case No. 17–cv–00224–YGR**

United States District Court, N.D. California.

Signed 07/18/2017

Walt Pennington, Pennington Law Firm, San Diego, CA, for Plaintiff.

Joseph George Martinez, III, Dentons US LLP, Denver, CO, Andrew S. Azarmi, Dentons US LLP, San Francisco, CA, for Defendants.

ORDER GRANTING DEFENDANTS' MOTION TO VACATE FINAL ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 10; DENYING PLAINTIFF'S MOTION TO CONFIRM AND CORRECT THE ARBITRATION AWARD

Hon. Yvonne Gonzalez Rogers, United States District Court Judge

Defendants ECC International, LLC and ECC CENTCOM Constructors, LLC (collectively "ECC") bring this motion to vacate a final arbitration award (the "Arbitration Award") entered against them and in favor of plaintiff Aspic Engineering and Construction Company ("Aspic") on the ground that the arbitrator exceeded his authority. (Dkt. No. 19.) Plaintiff Aspic opposes defendants' motion and moves to confirm and correct the award to include Aspic's attorney's fees. (Dkt. No. 17 at 20; Dkt. No. 26.) While considerable deference to an arbitrator exists under Ninth Circuit law, the Court finds here rare circumstances warranting vacatur.

## I. Relevant Background

ECC is an employee-owned engineering and construction firm located in Burlingame, California. ECC performs work on various commercial and government construction projects, including as a prime contractor to the U.S. Army Corp of Engineers ("USACE") supporting two reconstruction projects for police training facilities in Sheberghan and Badghis, Afghanistan (the "Projects"). (Dkt. No. 20–2, ECC Prehearing Brief at 3.) The prime contracts between USACE and ECC incorporated Federal Acquisition Regulations ("FAR") Sections 49.206 and 52.249–2, which allowed USACE to terminate the Projects "for convenience" and provided for ECC's recovery of costs and profits in the event of such a termination.[1]

---

1. The FAR system is the principal set of rules which govern the "acquisition process" by which executive agencies of the U.S. federal government contract to acquire goods and services with appropriated funds. Section 52.249–2 of the FAR permits the government to cancel a contract at any time "for convenience." Pursuant to Section 52.249–2 the government may cancel a contract without cause simply because it is in the government's best interest.

In the event of a termination for convenience, contractors are eligible to recover expenses and lost profits by calculating their costs under a specified methodology and then submitting "Settlement Proposals" to the applicable payer. Costs for construction contracts are calculated using either the "Inventory" or "Total Cost" basis. After the contractor calculates termination costs under the appropriate methodology, the contractor then submits a Settlement Proposal for payment. See FAR §§ 52.249–2(e), 49.108–3(a), 49.206–1(a). Each Settlement Proposal must be supported by accounting data and other information sufficient for adequate review by the payer. See FAR § 49.206–1(c). FAR § 52.249–2(e) requires that the Settlement Proposal be submitted within one year of the termination, unless extended in writing. If the proposal is not submitted within one year, the payer "may determine, on the basis of information available, the amount, if any, due the Contractor because of the termination and shall pay the amount determined." Id. § 52.249–

## A. The Subcontracts

ECC awarded subcontracts for the Projects (the "Subcontracts") to plaintiff Aspic, an Afghan engineering and contracting firm. (Dkt. No 20–10, Sheberghan Subcontract; Dkt. No. 20–11, Badghis Subcontract.) The Subcontracts are lengthy and provide detailed descriptions of termination rights, recovery of costs, and dispute resolution procedures. (*Id.*) For example, the Badghis Subcontract is 90 pages and incorporates more than 100 FARs. The Sheberghan Subcontract is even larger, totaling 450 pages and incorporating more than 250 FARs. Each Subcontract was signed by Aspic Vice President and co-owner Omar Irshad, who apparently had experience in contracting with the U.S. government and a familiarity with U.S. Government requirements including FAR clauses. (Sheberghan Subcontract ECC–000132; Badghis Subcontract at ECC–000002; Dkt. No. 14, Certification of Interested Entitles or Persons of Petitioner/Plaintiff Aspic at 1; Dkt. No. 20–4 at 8.)

After ECC and Aspic had partially performed under the prime and Subcontracts, respectively, USACE issued a notice of termination for convenience which ended the Projects in their entirety. (Dkt. No. 20–2, ECC Prehearing Brief at 4, 6.) On September 25, 2015, Aspic brought an arbitration claim against EEC seeking roughly $2.3 million for certain costs, lost profits, and attorneys' fees. (Dkt. No. 20–4, ECC Posthearing Brief at 23; Dkt. No. 20–3, Aspic Posthearing Brief at 6; Dkt. No. 20–5, Aspic Reply Brief at 20.)

## B. The Arbitration Award

An arbitration hearing was held from August 1–3, 2016 in Burlingame, California. On September 30, 2016, arbitrator Eugene M. Bass (the "Arbitrator") issued a partial final award in favor of Aspic in the amount of $1,072,520.90. (Dkt. No. 20–6, Partial Final Award.) The Arbitrator stated, in relevant part:

.... The parties entered into two lengthy subcontract agreements for the two projects which were prepared by ECC and presented to ASPIC. Each subcontract included very detailed provisions relating to Federal regulations governing the work as well as pass through and 'Pay when/if Paid' clauses. The subcontracts were somewhat onerous as to ASPIC and were clearly drafted to give every advantage to ECC. In light of the fact that the ASFIC was a local Afghanistan subcontractor that had some experience with government contracting but not nearly as extensive as that of ECC, and in view of the fact that the normal business practices and customs of subcontractors in Afghanistan were more 'primitive' than those of U.S. subcontractors experienced with U.S. Government work, it was not reasonable to expect that Afghanistan subcontractors would be able to conform to the strict and detailed requirements of general contractors on U.S. Federal projects. Notwithstanding that expectation, ECC prepared its subcontract agreements to require the same level of precision and adherence to Federal procedures from ASPIC as ECC had toward the USACE through the pass through provisions of the agreements.

It was not reasonable that when the parties entered into the subcontract agreements, they both had the same expectations as to the performance of the agreements. ECC could not expect that ASPIC would be capable of modifying

---

2(e). If the contractor fails to submit its Settlement Proposal within one year and does request an extension "there is no right of appeal." *Id.* § 52.249–2(j).

their local business practices to completely and strictly conform to the US governmental contracting practices that were normal to ECC. *There was not a true meeting of the minds when the subcontract agreements were entered. Hence, ASPIC was not held to the strict provisions of the subcontract agreements that ECC had to the USACE.* This arbitration demonstrated that AS-PIC conducted its business practices in a manner normal to Afghanistan which was clearly not the same as a US subcontractor working on a Federal project in the U.S . . . . .

(Emphasis supplied.) The award was made final on November 14, 2016. (Dkt. No. 20–9.)

## II. Legal Framework

■ Resolution of this matter implicates the New York Convention and the Federal Arbitration Act ("FAA"). First, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") requires U.S. courts to recognize and enforce arbitration awards made in foreign states that have assented to the terms of the New York Convention ("contracting states"). The New York Convention applies to arbitrations where one of the parties is a U.S. citizen and the other is a citizen of a foreign contracting state. 9 U.S.C. § 202; *LaPine v. Kyocera Corp.*, 2008 WL 2168914 at *3–4 (N.D. Cal. 2008). Under the New York Convention, an arbitral award in one contracting state is enforceable in any other contracting state unless enforcement would violate the "domestic law" of the country in which enforcement is sought. New York Convention Art. V.1(e), June 10, 1958, 21 U.S.T. 2517.

■ Next, under the FAA, "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court

review of an arbitral award." *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009). Review of an arbitration award is "both limited and highly deferential." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009). However, the Ninth Circuit has held that "[a]lthough an arbitrator has great freedom in determining an award, he may not dispense his own brand of industrial justice." *Garvey v. Roberts*, 203 F.3d 580, 588–89 (9th Cir. 2000) (quoting *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983)). Vacatur of an arbitration award is appropriate when (i) "the arbitrators exceeded their powers" or (ii) "the arbitrators were guilty of . . . any misbehavior by which the rights of any party have been prejudiced . . . ." 9 U.S.C. § 10(a)(3)–(4).

■ In the context of contractual disputes, arbitrators exceed their powers when they disregard the operative contract to correct a perceived unfair resolution. *See Pac. Motor Trucking*, 702 F.2d at 177. This occurs when the award is "completely irrational" or in "manifest disregard of the law." *See Comedy Club*, 553 F.3d at 1288; *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012). The Ninth Circuit instructs that the term "completely irrational" means an award "fails to draw its essence from the agreement." *Id.* Said differently, an "arbitration award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 642 (9th Cir. 2010) (quoting *Bosack*, 586 F.3d at 1106).

■ This exception does not include a mere difference of opinion regarding contractual interpretation. Arbitration awards should be confirmed as long as the "arbi-

trators' interpretation was 'plausible.'" *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1486 (9th Cir. 1991). An interpretation may still be plausible where that interpretation renders the contract language awkward and repetitive. *Id.* However, an "award that conflicts directly with the contract cannot be a 'plausible interpretation.'" *Pac. Motor Trucking*, 702 F.2d at 177 (quoting *Federated Employers of Nevada, Inc. v. Teamsters Local No. 631*, 600 F.2d 1263, 1265 (9th Cir. 1979)). In *Pac. Motor Trucking*, the Ninth Circuit affirmed vacatur of an arbitral award where "[t]he arbitrator disregarded a specific contract provision to correct what he perceived as an injustice." *Id.* There, the arbitrator acknowledged a contract provision which gave the employer discretion over selecting a "Working Foreman," yet ruled that the employer could not demote plaintiff because " . . . to do so would be 'unreasonable and unconscionable' in light of the 'incredibly long' time [plaintiff] had held the job." *Id.* The Court found that because the "award conflict[ed] directly with the contract," vacatur was proper. *Id.*; *see also S. California Gas Co. v. Util. Workers Union of Am., Local 132, AFL–CIO*, 265 F.3d 787, 800 (9th Cir. 2001) (upholding vacatur of arbitral award which "conflicts directly with the text of the collective bargaining agreement and thus cannot be considered a "plausible" interpretation").[2]

### III. Discussion

#### A. Choice of Law Analysis

The parties dispute whether review of the arbitration award is governed by federal or California law. ECC argues that federal law governs pursuant to the New York Convention and the FAA. By contrast, Aspic's position is that California law governs because the Subcontracts contain choice-of-law provisions selecting California, the arbitration took place in California, and enforcement of the award is being sought in California. However, the parties agree that the outcome would be substantially the same under federal or California law. Aspic concedes that "[t]he CAA and the Federal Arbitration Act (FAA) provide for vacatur of an arbitration award under similar circumstances." (Dkt. No. 27 at 6.) As Aspic recognizes, the CAA closely mirrors the FAA in providing for vacatur when "arbitrators exceeded their powers . . . ." Cal. Code. Civ. Proc. § 1286.2.

■ The New York Convention applies to "arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." New York Convention, Art. I(1). An arbitral award is "not considered as domestic" if it arises "out of a legal relationship . . . which is considered as commercial" and the relationship is not "entirely between citizens of the United States." 9 U.S.C. § 202. Here, recognition and enforcement of the Arbitration Award are sought in the United States. The construction services Subcontracts giving rise to the arbitral award are properly "considered as commercial" and Aspic is a citizen of Afghanistan. Therefore federal law governs this case pursuant to the New York Convention

---

2. Courts review arbitration awards under a second ground, i.e. misbehavior that prejudices a party's rights, afforded to "preserve due process." *Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016) (internal citations omitted). Due process is served when "the parties received a fundamentally fair hearing." *Id.* A fundamentally fair hearing requires that "each of the parties to the dispute [be given] an adequate opportunity to present its evidence and arguments." *Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1295 (9th Cir. 1987). Given the Court's ruling, it declines to address this ground.

and FAA.[3]

### B. Motions to Vacate or Confirm the Arbitration Award

The Court now turns to whether the Arbitration Award should be vacated or confirmed pursuant to the FAA.

In issuing the Arbitration Award, the Arbitrator found and recognized that the Subcontracts "included extensive detailed requirements pertaining to federal regulations which USACE required of ECC and which were in turn 'passed through' through the subcontracts to ASPIC." (Partial Final Award at 1.) Notwithstanding these provisions, the Arbitrator concluded that the Subcontracts did not reflect "a true meeting of the minds when the contract agreements were entered" because "the normal business practices and customs of subcontractors in Afghanistan were more 'primitive' than those of U.S. subcontractors" and "ECC could not expect that ASPIC would be capable of mod-

ifying their local business practices to completely and strictly conform to the US government contracting practices that were normal to ECC." (*Id.* at 1–2.) The Arbitrator decided that Aspic should "not [be] held to the strict provisions of the subcontract agreements ..." and proceeded to award Aspic costs and lost profits presumably unavailable to Aspic pursuant thereto. (*Id.* at 2–3.)

 The Court finds that the Arbitrator issued an "award that conflicts directly with the contract" by refusing to apply the terms of the agreement to the dispute. *Pacific Motor Co.*, 702 F.2d at 177. Such an award "cannot be a 'plausible interpretation'" of the operative contract and should not be confirmed. Here, the Arbitrator voided and reconstructed parts of the Subcontracts based on a belief that the Subcontracts did not reflect a "true meetings of the minds." Notably, neither party presented this argument to the Arbitrator. Aspic's arbitration briefs are replete with

---

3. Plaintiff argues that California law governs this arbitration award because the Subcontracts state that the agreement "shall be governed by and construed in accordance with the laws of the State of California." (Sheberghan Subcontract ¶ 13.3; Badghis Subcontract ¶ 13.3.) However, plaintiff's argument fails in light of the Ninth Circuit's decision in *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266 (9th Cir. 2002). The *Sovak* Court held that even "a general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration." *Sovak*, 280 F.3d at 1269–70. Similarly, the contractual choice-of-law provisions in the Subcontracts at issue are not sufficient to defeat the presumption that federal law applies. *Id.*

Aspic further replies on *Gueyffier* in arguing that California law governs because the arbitration took place in California and enforcement of the award is being sought in California. *Gueyffier v. Ann Summers, Ltd.*, 144 Cal. App.4th 166, 50 Cal.Rptr.3d 294 (Cal. App. 2006), *rev'd on other grounds*, 43 Cal.4th 1179, 1183, 77 Cal.Rptr.3d 613, 184 P.3d 739

(Cal. 2008). Plaintiff's reliance on *Gueyffier* is misplaced. There, the court noted in dicta that the case did not fall within the first sentence of Article I(1) of the New York Convention because the award at issue was made in California and enforcement was sought in California. However, in the paragraph immediately following the language which plaintiff quotes, the California Court of Appeals stated that the arbitration award at issue was in fact subject to the New York Convention because the relationship giving rise to the award was not "entirely between citizens of the United States." *Id.* at 166, 50 Cal.Rptr.3d 294. The same is true here as ECC is a U.S. citizen and Aspic is a citizen of Afghanistan. *Id.*

Finally, Plaintiff contends that federal law does not govern this case simply because it was removed to federal court. Again, Aspic misses the point. This case is governed by the FAA not because ECC removed it to federal court, but because the underlying contracts were commercial in nature and Aspic is an Afghan company. *See* New York Convention, Art. I(1); 9 U.S.C. § 202.

admissions that a valid contract existed. (*See* Dkt. No. 20–1 ("Aspic ... had substantially performed its contractual obligations"); Dkt. No. 20–3 ("The parties contracts were negotiated, drafted, and executed in Afghanistan.... Aspic performed on its subcontracts"); *see also* Dkt. No. 20–5.) As in *Pacific Motor Co.*, the Arbitrator "attempted to justify the award on the basis of past practice," *Pacific Motor Co.*, 702 F.2d at 177, rather than the operative Subcontracts. The Arbitrator reasoned that "the normal business practices and customs of subcontractors in Afganistan were more 'primitive' than those of U.S. subcontractors."

This conclusion, and justification, appears to be entirely lacking in foundation. The Arbitration Award thus "fails to draw its essence from the agreement." *Comedy Club, Inc.*, 553 F.3d at 1288. In ruling that Aspic was not required to comply with the Subcontracts' extensive detailed requirements pertaining to federal regulations, the Arbitrator fundamentally "disregarded" the contract "to correct what he perceived as an injustice." *Pac. Motor Trucking Co.*, 702 F.2d at 177. "Because the award conflicts directly with the contract, the [Court may] properly vacate[ ] the award." *Id.* Accordingly, the award is VACATED.

Aspic invites this Court to correct in part the Arbitration Award to include Aspic's attorney's fees. In light of the Court's decision to vacate the Arbitration Award, Aspic's motion is DENIED as moot. Aspic's request to impose a surety on certain ECC funds pending resolution of this dispute is DENIED.

## IV. Conclusion

For the foregoing reasons, defendants' motion to vacate the Arbitration Award is GRANTED. Plaintiff's motion to confirm and correct the Arbitration Award is DENIED as moot.

The Court ORDERS the parties to proceed to arbitration.

This terminates Dkt. No. 19.

IT IS SO ORDERED.